## SHERBUTTE *v.* CITY OF MARINE CITY.

1. TORTS—POLICEMAN—GOVERNMENTAL IMMUNITY OF MUNICIPALITY.
    A police officer is personally liable for his personal torts com-
    mitted in the course of his employment, but the political sub-
    division which employed him was not liable therefor on the
    ground of *respondeat superior* at time of enactment of statute
    empowering employer to indemnify him for judgments obtained
    against him, since it could not then be compelled to respond
    because of its governmental immunity. (PA 1951, No 59).

2. MUNICIPAL CORPORATIONS—STATUTES—INDEMNITY OF POLICEMAN
    FOR JUDGMENTS FOR TORTS.
    The statute authorizing a political subdivision to indemnify a
    policeman for any judgment recovered against him for torts
    he committed while engaged in the performance of his duties
    without rendering the political subdivision liable in law was
    directed against a presumed tendency of a jury to return
    a larger verdict against a public corporation than against a
    policeman only (PA 1951, No 59).

3. COURTS—GOVERNMENTAL IMMUNITY.
    The doctrine of governmental immunity, made by the courts, may
    be abrogated by courts.

4. MUNICIPAL CORPORATIONS—POLICEMAN—TORTS—CITY AS PARTY.
    A city, as employer of policeman who is claimed to have used
    unreasonable force in arresting plaintiff on October 6, 1961,
    *held,* improperly discharged as party defendant in action for
    alleged tort, notwithstanding provision of statute that a po-
    litical subdivision as employer of policeman should not be
    made a party defendant in action against policeman for
    torts he may have committed while in the performance of his
    duties (PA 1951, No 59).

5. ARREST—USE OF FORCE.
    Police officers must exert the reasonable force necessary to
    perform their important duty to society in the apprehension
    and confinement of malefactors.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 38 Am Jur, Municipal Corporations §§ 620–622.
[2] 37 Am Jur, Municipal Corporations § 130.
[5] 5 Am Jur 2d, Arrest §§ 80, 81.
[6] 14 Am Jur, Costs § 91.

6. COSTS—CONSTRUCTION OF STATUTES—CITY AS EMPLOYER OF POLICE-
     MAN—PARTIES.

     No costs are allowed on appeal from trial court's order dis-
     missing action against city by plaintiff who sought damages
     because defendant policeman had used unreasonable force when
     he arrested plaintiff on October 6, 1961, the construction of a
     statute being involved.

DETHMERS and KELLY, JJ., dissenting.

Appeal from St. Clair; Kane (Edward T.), J.
Submitted April 20, 1964. (Calendar No. 84, Docket
No. 50,067.) Decided November 2, 1964. Rehearing
denied February 2, 1965.

Case by Angus Sherbutte against City of Marine
City, a municipal corporation, and Joseph Valla for
personal injuries sustained October 6, 1961, from
unreasonable force during arrest. Action against
city dismissed on motion. Plaintiff appeals. Re-
versed and remanded.

_McKoan & McKoan,_ for plaintiff.

_Touma, Watson, Andresen & Kelly,_ for defendant
city.

O'HARA, J. This case requires the interpretation
of PA 1951, No 59.[1] At the time of the enactment
thereof Michigan recognized the broad concept of
governmental immunity from tort liability. As to
political subdivisions of the sovereignty it recognized
also the distinction between "governmental" and
"proprietary" functions. There were additionally
specified areas in which even the State itself was
legislatively rendered liable for its negligence. The
foregoing resume of the then extant case and statu-
tory law is relevant to an examination of the legis-
lative intent at the time of the passage of the statute
concerned. The involved provisions of the act read:

[1] CLS 1961, § 124.101 _et seq._ (Stat Ann 1958 Rev § 5.3376[1] _et
seq._).

"Sec. 1. In case an action is brought against a policeman of a political subdivision of this State for torts, * * * while such policeman is engaged in the performance of his duties * * * the political subdivision * * * may indemnify such policeman for any judgment recovered against such policeman. * * *

"Sec. 2. * * * That such political subdivision shall not be made a party to any such action."

The legislative intent seems to us to be clear. The legislature recognized that a police officer was personally liable for his personal torts committed in the course of his employment. The political subdivision was not liable for the tort of the police officer on the theory of *respondeat superior,* because the agency doctrine related a tortious act to it, for which it could not be compelled to respond because of its governmental immunity. No authority we know of classified a police officer's duty as "proprietary" in nature. A tortiously injured person was therefore in the position, upon the requisite showing, of obtaining a valueless judgment against a more often than not impecunious and execution-proof policeman. The legislature therefore without rendering the political subdivision liable in law, empowered it, in its discretion, to indemnify the officer against any judgment recovered against him.

We think the prohibition was directed against a presumed tendency of a jury to return a larger verdict against a public corporation than against a policeman only. Whatever the wisdom, efficacy, soundness, or lack thereof, in this theory, it is not our concern. That determination abides in the legislature. It seems obvious to us that primary intent of the enactment was to authorize, discretionarily, the expenditure of public moneys for an otherwise unauthorized purpose, namely, the reimbursement of a police officer for a judgment rendered against him

personally for which the political subdivision could not be held liable. However, as courts made the law of governmental immunity, those same courts can "unmake" it. This Court, by majority vote, did so in *Williams* v. *City of Detroit,* 364 Mich 231. Because of the numerical division of the Court in that case, the effect of the decision on the statute herein mentioned may be unclear. Certainly so it seems from the briefs of the parties hereto and the ruling of the trial judge.

In this case plaintiff brought an action against a police officer and the municipal corporation of Marine City, naming it as a defendant. The declaration alleged use of excessive force in his arrest, claimed injury therefrom and sought damages. Defendant city moved to dismiss as to it on the authority of the statute here involved. The trial court in a single sentence opinion found that "this matter is covered by CLS 1961, § 124.101 (Stat Ann 1958 Rev § 5.3376 [1]), and therefore, defendant, city of Marine City's motion to dismiss is hereby granted." The trial judge did not choose to discuss the effect of *Williams, supra,* and *Wardlow* v. *City of Detroit,* 364 Mich 291, decided the same day, upon the statute. Appellant says he should have, since the cases he urges are determinative of the issue here.

Appellee contrariwise says the statute controls. Further it contends that even if the court had considered the cases their effect is not what appellant contends for, namely, that defendant city no longer enjoys governmental immunity; *ergo* it should not be continued as a party defendant; *ergo* the trial judge was right in dismissing as to it. To determine these questions, it is first necessary to dissect *Williams.* Plaintiff there brought an action against the city of Detroit, Joseph Wolff and Mark Roberts, commissioner and inspector, respectively, of the city's department of buildings and safety engineering. The

suit was based on the negligent failure to safeguard an open elevator shaft. Defendant city moved to dismiss as to it on the ground that the building involved was used solely for a governmental purpose, and in consequence it enjoyed immunity from tort liability in connection with the building's maintenance. The trial judge granted the motion. All of the opinions in the case agree that no issue of "proprietary" function was involved. What did the 3 opinions decide?

First, and irrelevantly here, the decision affirmed the action of the trial judge in that case because 4 Justices voted for affirmance; Chief Justice CARR was joined in his vote by Justices KELLY, DETHMERS, and BLACK. Four Justices voted to reverse; Justice EDWARDS was joined in his opinion by Justices TALBOT SMITH, KAVANAGH, and SOURIS.

Justice BLACK's opinion must be considered separately, however. His vote for affirmance was, first, a protest against the EDWARDS' opinion limiting the overruling of "the judicial doctrine of governmental immunity" to the *Williams' Case* and to causes of action accruing after that opinion day, September 22, 1961. Second, Justice BLACK limited the overruling in that case to *municipal corporations.* Thus, while his vote was cast to affirm the trial judge in *that* case, it was cast to repudiate governmental immunity as to municipal corporation. The minimal result of *Williams,* therefore, was properly headnoted by the experienced reporter, Hiram C. Bond, as follows:

"Judgment for municipal corporation, as owner of building which it used in the performance of municipal purposes, holding it not liable for fatal injuries sustained by employee of moving company, which had been engaged to move furniture from building, who fell down unguarded opening between elevator

floor and side of shaft, is affirmed by an equally divided court.

"The judicial doctrine of governmental immunity from liability for ordinary torts is overruled by the Supreme Court, prospectively from this date except for the instant case, per SMITH, EDWARDS, KAVANAGH, and SOURIS, JJ., such overruling to be wholly prospective and limited to municipal corporations, per BLACK, J."

Incontestably, therefore, as of September 22, 1961, Marine City lost its governmental tort immunity as to causes of action accruing after that day. The cause of action here asserted accrued October 6, 1961. The permissive statute allowing political subdivisions to indemnify police officers for judgments rendered against them, and the condition of nonjoinder of the political subdivision, lost the basis for its clear legislative intent as of the date of the decision in *Williams*. The evil (if indeed it were one) against which the statute was directed could no longer eventuate.

The defendant city no longer enjoyed the immunity from the effect upon it of the alleged tortious act of its agent-servant, the police officer. It could be sued, named as a defendant, and compelled, upon requisite showing of agency, injury, and damage, to respond.

This, appellee says, may very well be, but the decision in Williams is limited additionally to "ordinary" torts, and this tort asserted is not any "ordinary" tort. This tort, it claims, is within Justice EDWARDS' limiting language (p 260):

"We deal in this case with a declaration which would clearly state an ordinary tort claim against a private individual or a private corporation. Our holding herein is limited to the statement that there is no longer any judicial doctrine of governmental

immunity *as to such a claim.*"   (Emphasis by Justice Edwards.)

Appellee's theory is that because *Williams* excluded "discretionary" acts, and that since a police officer has discretion as to whom he will arrest, for what reason the arrest will be made, and how much force will be used, his action is a "discretionary" one.   The theory is untenable.   The type of discretion contemplated in *Williams* is carefully defined (p 261):

"There are and will continue to be many situations in relation to which real or fancied grievances exist where governmental freedom from liability will persist on wholly different grounds.   *   *   *   The instant case, a tort action, does not in any manner alter the fact that *actions* or *decisions* of a *legislative, executive,* or *judicial* character which are performed within the scope of authority of the governmental body or officer concerned continue to enjoy freedom from liability.

"The people place great powers of decision making in the hands of their government.   In the exercise of discretionary power, governmental duty runs to the benefit of the whole public, rather than to individuals.   It is of great importance that this crucial function of democratic decision making be unhampered by litigation."[2]   (Emphasis supplied.)

_____

[2] Footnote, *Williams, supra* 261, 262:
" 'Government officials are liable for the negligent performance of their ministerial duties   *   *   *   but are not liable for their discretionary acts within the scope of their authority,   *   *   *   even if it is alleged that they acted maliciously.   *   *   *   Such immunity is not designed to protect the guilty, for "if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery.   The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.   *   *   *   In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to sub-

We think it unnecessary to expatiate on the point. The action of a police officer in making an arrest cannot be considered within the broad scope of the discretion allowed a free government in its legislative, executive, or judicial branch.

Appellant urges that our decision in *Wardlow* v. *City of Detroit*, 364 Mich 291, is controlling. Appellee urges that in *Wardlow* the Court did not consider the statute here involved relating specifically to an action against a police officer, even though in that case the action was against the municipal subdivision and 18 of its police officers.

It is true that the opinions in *Wardlow* are truncated. They do not answer with certainty appellee's contention. There is room, from Justice BLACK's reference to the date of the accrual of the cause of action in that case, to conclude that it was on that ground only that decision was made, since the majority concurred only "in affirmance."

Irrespective of the ground upon which the Court decided the motion to dismiss in *Wardlow,* we here now hold that the statute relied upon by the trial court is not authority for his action. This is for the reasons herein first discussed as to the legislative intent as necessarily construed under the law as it existed. at the time of the enactment of the cited statute. Since the statute was enacted before *Williams* it can hardly be urged that the legislature passed it with the decision of *Williams* in mind. It is no longer to be recognized as authority for prohibiting the naming as a defendant a political subdivision in an action against a police officer thereof. A necessary caveat: Though actions against munici-

ject those who try to do their duty to the constant dread of retaliation." Learned Hand, J., in *Gregoire* v. *Biddle,* 177 F2d 579, 581.' *Muskopf* v. *Corning Hospital District,* 55 Cal 2d 211, 220, 221 (11 Cal Rptr 89, 94, 95, 359 P2d 457)."

palities may now be maintained on the basis of the tortious acts of its police officers, this is not to say that every malefactor, or recalcitrant arrestee, may only be apprehended and confined ·pursuant to an engraved invitation complete with R.S.V.P. Police officers still may and must exert the reasonable force necessary to perform their important duty to society.

The order granting the motion to dismiss is vacated. The case is remanded to the trial court with instructions to reinstate the municipality as a party defendant. No costs are allowed as we construed a statute.

KAVANAGH, C. J., and SOURIS, SMITH, and ADAMS, JJ., concurred with O'HARA, J.

BLACK, J., concurred in result.

DETHMERS, J. (*dissenting*). I do not concur in reversal. First, I favor affirmance of the trial court order dismissing as to defendant city on the ground of governmental immunity for the reasons set forth in the opinion of Mr. Justice CARR in *Williams* v. *City of Detroit,* 364 Mich 231. Also, in my view, the order must be affirmed because of the prohibition contained in PA 1951, No 59 (CLS 1961, § 124.101 *et seq.* [Stat Ann 1958 Rev § 5.3376(1) *et, seq.*]), against making a political subdivision a party to any action such as this.

I do not agree with Mr. Justice O'HARA that Marine City lost any governmental immunity on September 22, 1961, the date of decision in *Williams.* If, however, *Williams* could be deemed to have had any such effect it would have extended only to the historic, Court-created immunity and not to the special case of immunity provided by the statute from liability for the tortious actions of its policeman engaged in the performance of his duties. Nowhere

in the several opinions in *Williams* is it said to have such effect, nor could it do so with respect to statutory immunity. I fail to see that the fact that the legislative prohibition of suit against a political subdivision for the torts of its policeman was enacted at a time when this Court followed the doctrine of governmental immunity means that that prohibition was intended by the legislature to cease so soon as this Court might thereafter depart from that doctrine. Manifestly, it was the legislative intent that the municipality should be immune and that the matter of payment by it on a judgment against its policeman should be discretionary with it but not enforceable against it, contrary to its wishes, by being made a party defendant, no matter what the views of this Court might happen to be, at any particular time, on the subject of Court-created governmental immunity.

The order should be affirmed. No costs.

KELLY, J., concurred with DETHMERS, J.