HIRYCH *v.* STATE FAIR COMMISSION.

KLIMEK *v.* SAME.

DECISION OF THE COURT.

1. APPEAL AND ERROR—STATES—MUNICIPAL CORPORATIONS.

Orders dismissing action against State and its administrative agency and granting summary judgment for defendant city and its police commissioner are affirmed in actions to recover damages for personal injuries sustained when guards at State fair broke up a disturbance.

SEPARATE OPINION.

SOURIS, SMITH, and ADAMS, JJ.

2. COURTS—COURT OF CLAIMS—EXCLUSIVE JURISDICTION—STATES.

*The court of claims has exclusive jurisdiction over claims and demands against the State or any of its agencies, notwithstand-*

REFERENCES FOR POINTS IN HEADNOTES .

[1] 5 Am Jur 2d, Appeal and Error § 931.
[2] 20 Am Jur 2d, Courts §§ 33, 87.
[3] 17 Am Jur, Discovery § 63.
    20 Am Jur 2d, Courts §§ 87, 97.
[4] 41 Am Jur, Pleading § 342.
[5] 38 Am Jur, Municipal Corporations § 620.
    47 Am Jur, Sheriffs, Police, and Constables §§ 158–160.
[6] 38 Am Jur, Municipal Corporations § 620.
    Municipal liability for personal injuries resulting from police officers' use of excessive force in performance of duty. 88 ALR2d 1330.
[7] 37 Am Jur, Municipal Corporations § 130.
[8] 20 Am Jur 2d, Courts §§ 33, 87.
[9, 10] 15 Am Jur 2d, Civil Rights §§ 14, 67.
[11] 15 Am Jur 2d, Civil Rights § 76.
[12] 38 Am Jur, Municipal Corporations § 620.
[13] 38 Am Jur, Municipal Corporations § 620.
    47 Am Jur, Sheriffs, Police, and Constables §§ 158–160.
[14] 30A Am Jur, Judges §§ 97, 99, 181.
[15] 30A Am Jur, Judges § 89.
[16] 30A Am Jur, Judges §§ 89, 97, 206, 209.
[17] 30A Am Jur, Judges § 209.

*ing the agency may sue or be sued, contract, and be contracted
with (CL 1948, § 691.108).*

3. DISCOVERY—PROPRIETARY FUNCTION—STATES—JURISDICTION OF CIRCUIT COURT.

*Whether or not a State agency was engaged in a proprietary
function is an immaterial question in an action in circuit court,
where such court has no jurisdiction over such agency, hence,
discovery of the books and records of such agency in order to
establish it was engaged in a proprietary function was properly
denied (CL 1948, § 691.608).*

4. JUDGMENT—SUMMARY JUDGMENT—GENUINE ISSUE AS TO MATERIAL FACT.

*Declarations by plaintiffs who were attacked and imprisoned by
State fair guards, and while in jail searched by city police and
taken to police headquarters, tried on charge of disturbing the
peace and found not guilty held, not to have raised a genuine
issue as to the material facts asserted by defendant city and its
police commissioner, when tested by such defendants' motions
for summary judgment in action for personal injuries sus-
tained in the melee (GCR 1963, 117).*

5. MUNICIPAL CORPORATIONS—CITY POLICE COMMISSIONER—VICARIOUS RESPONSIBILITY FOR ACTS OF POLICEMEN.

*A city police commissioner who is without knowledge of the
alleged acts of the police involved in a melee at a State fair,
and which acts were shown as not having been done under his
direction is within the general rule that a government officer is
not vicariously responsible for the acts of his subordinates,
since policemen are generally not selected exclusively by the
chief of police, are themselves officers, and do not act for the
chief of police in the performance of their official duties.*

6. SAME—POLICE ACTIVITY—GOVERNMENTAL IMMUNITY.

*Police activity prior to September 22, 1961, was the exercise of
a governmental function as to which governmental immunity
from liability existed, hence, city was properly dismissed as
a defendant in actions by plaintiffs who claim to have been
involved with a huge gang of youthful rowdies, attacked and
imprisoned at a State fair by fair's guards, searched by city
police and tried on charge of disorderly conduct and acquitted.*

7. SAME—POLICEMEN—INDEMNIFICATION FOR TORTS.

*A city may not be held responsible for acts of its policemen be-
cause of act permitting, but not requiring, it to indemnify its
policemen for torts committed by them, especially in view of*

*provision of indemnification statute excluding the city as a party (CLS 1961, § 124.102).*

8. States—Summary Judgment—Civil Rights—Court of Claims.

*The State and its State fair agency were properly granted summary judgment in action brought in circuit court, notwithstanding the Federal civil rights act giving any person who, under color of State law, is made to suffer a deprivation of any right, privilege, or immunity secured by Federal Constitution or law that is protected through the equal protection clause, since the court of claims has exclusive jurisdiction of actions against the State and any of its agencies (US Const, Am 14; 42 USCA, §§ 1983, 1985; CL 1948, § 691.108).*

9. Municipal Corporations—Civil Rights—Parties.

*A city and the State and its agencies are not within the class of persons liable under the Federal civil rights act provision according a cause of action to any person who, under color of a State law, is made to suffer a deprivation of any right, privilege, or immunity secured under the Federal Constitution or law protected by the equal protection clause (US Const, Am 14; 42 USCA, § 1983).*

10. Same—Civil Rights—Conspiracy.

*A city, acting in a sovereign capacity, such as preserving the peace at a State fair, and the State and its agency, are immune from suits arising under Federal civil rights act provision giving a person a cause of action who has been the victim of a conspiracy by 2 or more persons to deprive him of equal protection or equal privileges and immunities under the law (US Const, Am 14; 42 USCA, § 1985).*

11. Same—City Police Commissioner—Pleading.

*Allegations of declaration seeking damages from city police commissioner for alleged violation of Federal civil rights law held, defective, where they fail to set forth facts showing some intentional and purposeful deprivation of constitutional rights (42 USCA, § 1985).*

12. Officers—Immunity from Liability—Good Faith Discharge of Discretionary Acts.

*Whether the doctrine of governmental immunity applies to subordinate governmental officials is dependent upon the balance between the conflicting considerations of protection of the individual citizen against damage caused by oppressive or malicious action on the part of public officers and the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or*

*ill-founded damage suits based on acts done in the exercise of their official responsibilities, a balance achieved by qualifying their immunity to include only good faith discretionary acts done within the scope of their authority.*

13. Municipal Corporations—City Police Commissioner—Discretion—Good Faith.

*City police commissioner held, on motion for summary judgment, not liable for acts involved in melee at State fair and subsequent prosecution for disorderly conduct, where participation or responsibility for the acts was fully denied by .affidavit and denial was not controverted.*

14. Judges—Disqualification—Bailiffs.

*A circuit judge properly denied he was disqualified to preside in prosecution for disorderly conduct arising from melee at State fair merely because his bailiff had also been employed as a guard for the State agency conducting the fair, or because the judge himself had been an assistant prosecuting attorney for a long time.*

15. Same—Disqualification.

*A trial judge should never allow himself to be badgered into a disqualification, but if the least possible basis for it does exist, he should request reassignment of the case, an action which is not an adverse reflection upon the judge's character, integrity, or ability.*

16. Same—Disqualification—Written Opinion.

*A trial judge who promises a written opinion on motions for dismissal or summary judgment should enter such an opinion for the purpose of informing counsel as to the reasons for his decisions and to afford an adequate record for review (GCR 1963, 517.1).*

Separate Opinion.

Dethmers and O'Hara, JJ.

17. Judges—Disqualification—Admonition—Written Opinion.

*Admonition to trial judges in the matter of disqualifying themselves when motion therefor is made and discussion as to whether or not a written opinion in the matter of disqualification held, irrelevant to decision.*

Appeal from Wayne; Rashid (Joseph G.), J. Submitted May 13, 1965. Calendar Nos. 39, 40; Docket Nos. 50,690, 50,691.) Decided October 4, 1965.

Declaration by Edward Hirych against the State of Michigan, Michigan State Fair Commission, the City of Detroit, a municipal corporation, Herbert Hart, Police Commissioner of the City of Detroit, and others for injuries allegedly sustained when guards employed by defendant State Fair Commission broke up a disturbance on the grounds of the Michigan State Fair. Similar action by Vitold William Klimek. Cases dismissed as to the State of Michigan and the State Fair Commission. Summary judgments for the City of Detroit and Commissioner Hart. Plaintiffs appeal. Affirmed.

*Walter A. Kurz,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Mario Hector Cisneros,* Assistant Attorney General, for the State of Michigan and Michigan State Fair Commission.

*Robert Reese,* Corporation Counsel, and *John E. Cross* and *William P. Doran,* Assistants Corporation Counsel, for City of Detroit and Herbert W. Hart.

ADAMS, J. Plaintiffs appeal from a dismissal of the State of Michigan and the Michigan State fair commission and, also, from summary judgments granted the city of Detroit and Police Commissioner Hart.

On September 2, 1960, plaintiffs paid for admission to the Michigan State fair. While on the grounds, they claim they became involved with "a huge gang of youthful rowdies", that they were attacked by guards in street clothes employed by the State fair, that the guards imprisoned them, that while in jail at the fair grounds they were searched by Detroit police and then taken to Detroit police

headquarters. On September 3, 1960, they were tried in recorder's court on a charge of disturbing the peace and found not guilty. About two years later, plaintiffs filed suit. Their declarations contained counts for assault and battery, false arrest, malicious prosecution, and claims in assumpsit. Amended declarations added two counts under the Federal civil rights act.[1]

### 1.

The trial judge granted a motion to dismiss the State of Michigan and the Michigan State fair commission for lack of jurisdiction, exclusive jurisdiction for claims against the State and its commissions being vested in the court of claims. CL 1948, § 691-.101 *et seq.* (Stat Ann 1959 Cum Supp § 27.3548[1] *et seq.*).[2] The jurisdiction and constitutionality of the court of claims was passed upon by this Court in *Glass* v. *Dudley Paper Company*, 365 Mich 227. See, also, *Fox* v. *Board of Regents of the University of Michigan,* 375 Mich 238, and *McElrath* v. *United States,* 102 US 426, 440 (26 L ed 189). While the latter case upheld the constitutionality of the United States court of claims, the reasoning is relevant here.

---

[1] The amended declarations mentioned 42 USCA, §§ 1981, 1983, 1985, 1986, and 1988. Sections 1983 and 1985 are discussed *infra.* It is apparent upon a reading of the other sections that they are inappropriate to plaintiffs' suit. Section 1981 does not provide a civil cause of action for damages. *Hanna* v. *Home Insurance Company* (CA 5), 281 F2d 298, 303, certiorari denied, 365 US 838 (81 S Ct 751, 5 L ed 2d 747), rehearing denied, 366 US 955 (81 S Ct 1905, 6 L ed 2d 1247); *Watson* v. *Devlin* (ED Mich), 167 F Supp 638, 640, affirmed, 268 F2d 211. Section 1986 provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." Section 1988 does not provide a cause of action, but speaks only to the law and procedure to be applied in the Federal district courts.

[2] Reenacted by PA 1961, No 236, § 6401 *et seq.,* the revised judicature act, effective January 1, 1963 (CLS 1961, § 600.6401 *et seq.* [Stat Ann 1962 Rev § 27A.6401 *et seq.*]).

The Michigan State fair commission was created by PA 1956, No 100 (CLS 1961, § 291.1 *et seq.* [Stat Ann 1958 Rev § 12.1280(1) *et seq.*]), its members to be appointed by the governor. The objective of the commission was "for the purpose of promoting all phases of the economy of Michigan." (CLS 1961, § 291.2 [Stat Ann 1958 Rev § 12.1280(2)].) The commission was replaced by the Michigan State fair authority by virtue of PA 1962, No 224 (CL 1948, § 291.21 *et seq.* [Stat Ann 1963 Cum Supp § 12.1280 (21) *et seq.*]). Section 3 of that act[3] provides that the authority succeeds to all the rights, powers and duties of the commission, while section 1 of the act[4] provides that the authority "may sue and be sued, contract and be contracted with." Such provision is insufficient to remove the authority from the jurisdiction of the court of claims. The sweeping language of the court of claims act provides jurisdiction *"over claims and demands* against the State or any of its departments, commissions, boards, institutions, arms or agencies, *shall be exclusive.*"[5] (Emphasis supplied.)

2.

Appellants assert that they should have been granted discovery of the books and records of the State fair authority in order to establish that it was engaged in a proprietary function. Since the circuit court has no jurisdiction over any claim, proprietary or otherwise, against the authority or the State of Michigan, the question as to proprietary function was immaterial. Discovery was properly denied.

---

[3] CL 1948, § 291.23 (Stat Ann 1963 Cum Supp § 12.1280[3]).— Reporter.

[4] CL 1948, § 291.21 (Stat Ann 1963 Cum Supp § 12.1280[1]).— Reporter.

[5] CL 1948, § 691.108 (Stat Ann 1959 Cum Supp § 27.3548[8]). Now superseded by PA 1961, No 236, § 6419 (CLS 1961, § 600.6419 [Stat Ann 1962 Rev § 27A.6419]).—Reporter.

3.

Summary judgments for the city of Detroit and Police Commissioner Hart were granted upon a showing that the police officers were acting in a governmental capacity, that Commissioner Hart had no knowledge of the alleged acts of the police and that the acts were not done under his direction. Upon these issues appellants were given ample opportunity for discovery. Commissioner Hart was deposed at length, as was also Robert A. Lothian, second deputy commissioner of the Detroit police department who had charge of the business administration of that department. Their testimony, together with their affidavits and those of police officer Paul Gitschlag and Fred W. Lyons, second deputy commissioner previously in charge of the business administration of the police department, was to the effect that the city of Detroit never received any money for activities of the city police at the State fair; that the police were at the fair in pursuance of regular police activities; and that Hart had no specific knowledge of the presence of Detroit police at the fair and gave no directives with regard to their activities there.

Plaintiffs' declarations, when tested by the motions for summary judgment, were not supported by any affidavits, depositions, or other evidence which would raise a genuine issue as to the material facts asserted by the city of Detroit and Commissioner Hart. GCR 1963, 117. *Durant* v. *Stahlin,* 375 Mich 628.

First, as to Commissioner Hart, upon such uncontroverted facts, he is not liable for the acts of his subordinates.

"Generally a government officer is not *vicariously* responsible for the acts of his subordinates any more than a foreman or factory superintendent would be, though there is an exception—now possibly losing

ground—in the case of sheriffs, marshals and constables who are liable for the acts of their deputies." 2 Harper and James, Torts, § 29.8, pp 1633, 1634.

In Michigan, the exception is represented by *Bostatter* v. *Hinchman*, 243 Mich 589. In that case, a sheriff appointed Hinchman a special deputy to serve (p 590) "during my [the sheriff's] pleasure." While the sheriff was away, his undersheriff called Hinchman to investigate an incident. While doing so, Hinchman shot plaintiff's decedent. The sheriff was held liable for the reckless killing of an innocent person by his personally appointed deputy.

In *Smith* v. *Olander*, 251 Mich 503, defendant was the State commissioner of public safety. One of defendant's troopers had legally arrested plaintiff and then, without excuse, assaulted him. This Court stated (p 505):

"There being no showing that the trooper in his wrongdoing was acting under the direction of the commissioner or with his knowledge, therefore, it must be assumed that the trooper acted contrary to the lawful demands of the commissioner, and we must hold that *liability for the wrong done is limited to the wrongdoer.*" (Emphasis supplied.)

The reason for the distinction between police commissioners and sheriffs was explained in *Pavish* v. *Meyers*, 129 Wash 605, 611 (225 P 633, 635):

"This court has held that a sheriff is liable for the misconduct of his deputies. * * *
"But the courts have very generally drawn a distinction between a sheriff and a chief of police, holding that the deputies of the former are selected by the sheriff and act purely as his representatives, but that police officers are generally not selected exclusively by the chief of police, and are themselves officers and do not act for the chief of police in the performance of their official duties."

As for the city of Detroit, its police activity was in the exercise of a governmental function. Under *Williams* v. *City of Detroit,* 364 Mich 231, governmental immunity exists as to any such acts of a city prior to September 22, 1961. See, also, *Wardlow* v. *City of Detroit,* 364 Mich 291, and *Sherbutle* v. *City of Marine City,* 374 Mich 48.

The trial judge correctly refused to retain the city of Detroit as a defendant under the Michigan indemnification statute (PA 1951, No 59 [CLS 1961, § 124.101 *et seq.* (Stat Ann 1958 Rev § 5.3376[1] *et seq.*)]).[6] The act is permissive, containing the word "may" which distinguishes it from the Illinois indemnity statute (Smith-Hurd Ill Ann Stat ch 24, §§ 1–4–5, 1–4–6) which provides that a municipality "shall" indemnify policemen. The single permissive word "may" is controlling. A city *may* or *may not* indemnify policemen under the Michigan indemnification statute but it may not be made a party *on the basis of* that statute which specifically provides, section 2:

"Such political subdivision shall not be made a party to any such action."

As a result of the decisions in *Williams* and *Sherbutte, supra,* a city can be held liable for torts by its agents committed after September 22, 1961, on the theory of *respondeat superior.*

4.

Plaintiffs, in their amended declarations, alleged that defendants were liable under 42 USCA, §§ 1983, 1985, of the Federal civil rights act. Section 1983 gives a cause of action to any person who, under color of State law, is made to suffer a deprivation

---

6 Amended by PA 1963, No 83 (Stat Ann 1963 Cum Supp § 5.3376 [1] *et seq.*).

of any right, privilege, or immunity secured by the Constitution and law of the United States. It has been interpreted as covering any right protected through the 14th Amendment. *Monroe* v. *Pape,* 365 US 167, 171, 180 (81 S Ct 473, 5 L ed 2d 492). *Egan* v. *City of Aurora,* 365 US 514, 515 (81 S Ct 684, 5 L ed 2d 741). Section 1985 gives a cause of action to any person who has been the victim of a conspiracy by two or more persons to deprive him of equal protection or equal privileges and immunities under the law.

Assuming, without deciding, our jurisdiction over plaintiffs' claims under the Federal civil rights act, the claims were nevertheless subject to summary judgment. The city of Detroit is not within the class of persons liable under section 1983. *Monroe* v. *Pape, supra,* pp 191, 192; *Spampinato* v. *City of New York* (CA 2), 311 F2d 439; and a city, acting in a sovereign capacity, is immune from suits arising under section 1985, *Agnew* v. *City of Compton* (CA 9), 239 F2d 226, 232, 233, certiorari denied, 353 US 959 (77 S Ct 868, 1 L ed 2d 910); *Sires* v. *Cole* (CA 9), 320 F2d 877, 879. Under the construction given the Federal civil rights act in these cases, the fair authority and the State of Michigan are also clearly not within the purview of the act.

Commissioner Hart's possible liability under the civil rights act is not as clear. Plaintiffs' complaints allege (1) that he was commissioner when the acts occurred, and (2) that the wrongdoers received their directives from him.[7]

---

[7] Under section 1985, these allegations are defective because they fail to "set forth facts showing some intentional and purposeful deprivation of constitutional rights." *Powell* v. *Workmen's Compensation Board of the State of New York* (CA 2), 327 F2d 131, 137. See, also, *Snowden* v. *Hughes,* 321 US 1, 8 (64 S Ct 397, 88 L ed 497). However, under section 1983, the allegations may state a cause of action because of the United States Supreme Court's ruling in *Monroe* v. *Pape, supra,* p 187. For an analysis of that ruling see *Bowens* v. *Knazze* (ND Ill, 1965), 237 F Supp 826, 828.

Federal courts have granted some government officials immunity under the civil rights act. The extent of the immunity is, as yet, not fully defined. It includes legislative and judicial officers. *Tenney* v. *Brandhove,* 341 US 367 (71 S Ct 783, 95 L ed 1019); *Kenney* v. *Fox* (CA 6), 232 F2d 288, 292, certiorari denied 352 US 855 (77 S Ct 84, 1 L ed 2d 66).

Whether immunity will apply in favor of subordinate officials[8] depends upon the balance between two conflicting considerations. These are:

"the protection of the individual citizen against damage caused by oppressive or malicious action on the part of public officers, and the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage suits based on acts done in the exercise of their official responsibilities." *Norton* v. *McShane* (CA 5), 332 F2d 855, 857.

Balance is achieved between these considerations by qualifying the immunity of subordinate officials to include only good-faith discretionary acts done within the scope of their authority. *Cobb* v. *City of Malden* (CA 1), 202 F2d 701, 707; *Nelson* v. *Knox* (CA 6), 256 F2d 312, 315; *Rhodes* v. *Houston* (D Neb), 202 F Supp 624, 636, affirmed (CA 8), 309 F2d 959, certiorari denied, 372 US 909 (83 S Ct 724, 9 L ed 2d 719). Note, The Civil Rights Acts of 1871: Continuing Vitality, 40 Notre Dame Lawyer 70, 77. This view on immunity is, we believe, the better Federal rule.[9] Plaintiffs' allegations, taken alone, can be

---

[8] See Comment, Civil Liability of Subordinate State Officials Under the Civil Rights Acts and the Doctrine of Official Immunity, 44 Cal L Rev 887.

[9] See, however, *Sheridan* v. *Williams* (CA 9), 333 F2d 581–583. A number of United States Supreme Court decisions, without discussing the question of immunity, have held subordinate officials liable for refusing to register Negroes under color of discriminatory State legislation. *Myers* v. *Anderson,* 238 US 368 (35 S Ct 932, 59 L ed

construed to state a cause of action against Commissioner Hart. However, those allegations were fully denied by the affidavits and depositions filed in support of the motions for summary judgment, which affidavits and depositions plaintiffs failed to controvert. Consequently there is no basis for the claim against him. *Durant* v. *Stahlin* (1965), 375 Mich 628, 638, 639, 656, 657.

## 5.

The attempt to disqualify the circuit judge[10] because his bailiff was also employed as a guard for the Michigan State fair commission, and because the judge might be prejudiced due to his long tenure with the office of the Wayne county prosecuting attorney as an assistant prosecutor, was properly denied. Upon the record before us, there is no substance to either reason.

A trial judge should never allow himself to be badgered into a disqualification; but, if the least possible basis for it does exist, a judge should request reassignment of the case. Such action is not a reflection upon the judge's character, integrity, or ability. On the contrary, it reflects honor upon him and upon our system of justice that he will voluntarily disqualify himself to insure a fair trial.

While the lower court adequately disposed of these matters from the bench, Judge Rashid did fail to file written opinions. His assertion, when request was made to him for written opinions, that he made

1349) ; *Nixon* v. *Herndon*, 273 US 536 (47 S Ct 446, 71 L ed 759); *Smith* v. *Allwright*, 321 US 649 (64 S Ct 757, 88 L ed 987).

One explanation of the failure to decide the question of immunity is that it was not presented. Comment, 44 Cal L Rev, *supra* and p 895. Another is that a distinction may be made between suits to compensate and suits to discourage future misconduct affecting a broad class of persons. See Comment, The Doctrine of Immunity Under the Civil Rights Acts, 68 Harv L Rev 1229, 1233.

10 For current provisions, see GCR 1963, 405.1.—Reporter.

no such promise is contradicted by the record. Written opinions were promised. They should have been entered for the purpose of informing counsel as to the reasons for the decisions and to afford an adequate record for review.[11]

The trial court is affirmed. Costs to appellees.

SOURIS and SMITH, JJ., concurred with ADAMS, J.

T. M. KAVANAGH, C. J., and KELLY and BLACK, JJ., concurred in result.

O'HARA, J. (*concurring*). I concur in the result reached by Mr. Justice ADAMS. I am not prepared to concur in the last two paragraphs of section 5. I do not regard them as decisionally relevant.

DETHMERS, J., concurred with O'HARA, J.

---

[11] See GCR 1963, 517.1.—REPORTER.