WILL v DEPARTMENT OF CIVIL SERVICE

Docket No. 74840. Submitted October 12, 1984, at Lansing.—Decided July 9, 1985.

Ray E. Will, a state employee, applied in 1973 for a position in the Michigan Department of State Police, he being then employed in a lower paying job in another department. Although Will was ranked number two on the employment register and the number one candidate withdrew, the state police did not hire him. In 1977, he learned that, at the time of his 1973 application, the state police personnel office had been informed that his brother was a student activist. Will sought a hearing on his grievance that he had been wrongfully denied the promotion in 1973. A hearing was eventually held, at which time the hearing officer held that "partisan considerations" were a substantial factor in his not being hired by the state police, in violation of the civil service provision of the Michigan Constitution and the Civil Service Commission rules, and awarded Will $201.60, which represented the pay difference between the position which he held and the state police job for the period between the date the state police job was offered to another applicant and the date Will got another state job with a salary comparable to the state police job. Will thereafter brought in the Court of Claims an action for damages against the Department of Civil Service, the State Personnel Director, the Department of State Police and the Director of State Police, basing his claim both on the federal civil rights statute provision providing an action for damages for the deprivation of federal civil rights, 42 USC 1983, and the Michigan Constitution. The court, Thomas L. Brown, J., dismissed the Michigan

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Civil Rights §§ 263 et seq.
See the annotations in the ALR3rd/4th Quick Index under Discrimination.
[2, 3] Am Jur 2d, Civil Rights §§ 268, 269.
See the annotations in the ALR3rd/4th Quick Index under Governmental Immunity or Privilege.
[4, 5] Am Jur 2d, Civil Rights §§ 272 et seq.
Punitive damages in actions for violations of Federal Civil Rights Acts. 14 ALR Fed 608.

Constitution count as to all defendants, dismissed the 42 USC 1983 claim as to the Civil Service Commission and the State Personnel Director, found liability on the 42 USC 1983 claim against the Department of State Police and the Director of State Police, and awarded as damages $584.64 for lost wages, $40,544 for career loss, $56,052 for emotional distress and $56,052 in exemplary damages. Defendants State Police and State Police Director appealed. *Held:*

1. The Court of Claims had subject matter jurisdiction to hear the 42 USC 1983 claims against both the Department of State Police and the Director of State Police.

2. A 42 USC 1983 action is not maintainable against the State of Michigan or its agencies or departments because the state is not a person within the meaning of that federal act, the act did not abrogate sovereign immunity and Michigan has not waived its sovereign immunity with respect to 42 USC 1983 actions.

3. While a 42 USC 1983 action may be brought against a state official where the official acts under the color of state authority, such an action is maintainable against such officials only if it is shown that a specific act or omission by the official was a causative factor in depriving the plaintiff of his civil rights. Liability as to the Director of State Police will only attach upon a showing of his specific involvement.

4. While exemplary damages may be awarded in 42 USC 1983 cases where such damages have been historically permitted under the common law, exemplary damages were clearly erroneous in this case. The method of calculating lost wages and career loss was improper.

Judgment vacated in part and remanded.

GRIBBS, J., concurred but would hold that it was unnecessary to determine whether the state is a person within the meaning of 42 USC 1983 since the action against the state is precluded on the grounds of sovereign immunity.

### OPINION OF THE COURT

1. COURTS — COURT OF CLAIMS — JURISDICTION — CIVIL RIGHTS — STATE OFFICIALS.

   The Court of Claims has statutory subject matter jurisdiction to hear 42 USC 1983 civil rights claims brought against the state, including suits brought against state officials in their official capacities.

2. CIVIL RIGHTS — ACTIONS — STATES — GOVERNMENTAL IMMUNITY.

   A 42 USC 1983 civil rights action for damages arising out of the

deprivation of civil rights is not maintainable against the State of Michigan because the state is not a "person" within the meaning of that act and because the act did not abrogate sovereign immunity and Michigan has not waived its sovereign immunity with respect to such actions.

3. Civil Rights — Actions — State Official.

A 42 USC 1983 civil rights action may be brought against state officials where such officials cause a deprivation of an individual's civil rights under color of state authority; however, such a claim is maintainable only where it is shown a specific act or omission by the state officials was a causative factor in depriving the plaintiff of his federal civil rights; a mere showing of authority of the state official over others who may have violated the plaintiff's civil rights is not sufficient to maintain a 42 USC 1983 action against the state official.

4. Civil Rights — Actions — Damages — Exemplary Damages.

The damage award in a 42 USC 1983 civil rights action should compensate the plaintiff for injuries caused by the deprivation of the constitutional rights; the award may include punitive or exemplary damages where such damages would have been permitted at common law.

CONCURRENCE BY GRIBBS, J.

5. Civil Rights — Actions — Sovereign Immunity.

*It is unnecessary to decide whether the State of Michigan is a "person" within the meaning of the federal civil rights provision providing for an action for damages for deprivation of federal civil rights, since an action against the state is precluded on the grounds of the state's sovereign immunity (42 USC 1983).*

*Lick, Emery, DeVine & Mallory, P.C.* (by *Lawrence J. Emery*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George H. Weller,* Assistant Attorney General, for defendants.

Before: DANHOF, C.J., and GRIBBS and R. M. SHUSTER,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Plaintiff, a state employee, sued defendants for damages for wrongfully denying him employment with the state police, pursuant to 42 USC 1983 and the Michigan Constitution. The Court of Claims granted plaintiff summary judgment against the Department of State Police and the Director of State Police on the basis of his 42 USC 1983 claim. The Department of State Police and its director (hereinafter defendants) appeal as of right, raising issues of jurisdiction, liability, and damages. Defendants' motion to affirm in plaintiff's cross-appeal was granted.

FACTS

Plaintiff has been a state employee since 1969. He began at level 7 in the Department of State, and was reclassified to level 9. He was then transferred to a level 10 position at the Department of Social Services, and then to a level 11 position as an administrative analyst, an entry supervisory position. In the latter half of 1973, plaintiff sought opportunities to advance to data systems analyst 11, and one of these opportunities arose with the state police. Although plaintiff was ranked number two on the promotional register and the number one candidate withdrew, plaintiff was not hired by the state police that summer. He subsequently obtained a data systems analyst 11 position with the Highway Department in November, 1973.

Unbeknownst to plaintiff, when the defendant department ran a security check on plaintiff, information about plaintiff's student activist brother, Charles, was released. Charles' file contained the notation, "Subject's brother Ray Eugene DOB 2-27-44 made application for employment with MSP. Personnel advised 8-9-73." Plaintiff did not learn of this until 1977, when legislation providing for

maintenance of the so-called "red squad" files, 1950 (Ex Sess) PA 38, 39, and 40, was declared unconstitutional and Charles obtained his file and showed it to his brother, plaintiff.

Plaintiff sought a hearing with the Civil Service Commission, but his grievance was dismissed as untimely. Plaintiff appealed to circuit court, which ordered that plaintiff be granted a hearing. The hearing officer ruled that "partisan considerations" were a substantial factor in plaintiff's being denied employment with the state police, in violation of Const 1963, art 11, § 5 and Civil Services Rules 1.1 and 1.2. Plaintiff was therefore awarded $201.60, the pay difference between administrative analyst 11 and data systems analyst 11 for the period from the date on which the state police hired another candidate for the data systems analyst position, September 23, 1973, to the date on which plaintiff obtained the comparable position with the Highway Department, November 4, 1973.

Plaintiff then began this action in the Court of Claims, seeking damages under 42 USC 1983 and the Michigan Constitution. Accelerated judgment was granted to all defendants on the count pertaining to the Michigan Constitution, as plaintiff had not exhausted his administrative remedies. Based on the grievance decision, summary judgment as to liability was granted in favor of plaintiff and against the Department of State Police and the Director of State Police; and the Department of Civil Service and State Personnel Director were dismissed from the action. After a hearing on damages, the court awarded plaintiff $584.64 for lost wages, $40,544 for career loss, $56,052 for emotional distress, and $56,052 in exemplary damages.

## ISSUE AND DECISION

May the State of Michigan, its agencies, or their

directors be sued for damages in the Court of Claims under the Fourteenth Amendment and 42 USC 1983?

This panel holds that the Court of Claims has jurisdiction over 42 USC 1983 actions against the state, its agencies, and their directors, but such actions cannot be maintained against the state or its agencies because Congress has not abrogated states' sovereign immunity from § 1983 suits, and the state has not waived its immunity. In addition, liability of a director of a state agency is available only in certain cases and has not been established in this case.

### A. *Court of Claims Jurisdiction over a 42 USC 1983 Action*

Defendants argue that the Court of Claims has no jurisdiction over an action brought against the state based on the Fourteenth Amendment. We hold that, while the Court of Claims has jurisdiction over federally created causes of action such as those enacted to enforce the Fourteenth Amendment, the state and its agencies cannot be sued under 42 USC 1983.

The Court of Claims was created, and its jurisdiction defined, in 1939 by the following provision, which has remained intact to the present:

"The court has power and jurisdiction:

"(a) To hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms or agencies." MCL 600.6419(1); MSA 27A.6419(1).

This jurisdiction is exclusive, "except as provided in section 6440". MCL 600.6440; MSA 27A.6440 provides:

"No claimant may be permitted to file claim in said court against the state nor any department, commission, board, institution, arm or agency thereof who has an adequate remedy upon his claim in the federal courts * * *."

The Eleventh Amendment to the U. S. Constitution bars suits by private citizens against the State of Michigan in federal court. *Brown Brothers Equipment Co v Michigan,* 266 F Supp 506 (WD Mich, 1967). The Court of Claims Act does not provide consent for such suits. *Id.* Thus, suits against the State of Michigan by citizens of this state may be brought only in the Court of Claims.

By virtue of the supremacy clause of US Const, art VI, § 2, state courts must give cognizance to federal statutes. *Testa v Katt,* 330 US 386; 67 S Ct 810; 91 L Ed 967 (1947); *Dudley v Genesee County Sheriff,* 50 Mich App 678, 680; 213 NW2d 805 (1973). Although the U. S. Supreme Court has expressly reserved the question whether state courts are obligated to entertain § 1983 actions, *Maine v Thiboutot,* 448 US 1, 3, fn 1; 100 S Ct 2502; 65 L Ed 2d 535 (1980); *Martinez v California,* 444 US 277, 283, fn 7; 100 S Ct 553; 62 L Ed 2d 481 (1980), Michigan courts have permitted such actions without questioning their right to refuse them, *cf. Chamberlain v Brown,* 442 SW2d 248 (Tenn, 1969). Since the Court of Claims has exclusive jurisdiction over all actions against the state, it must have subject-matter jurisdiction over actions against the state brought pursuant to a federal statute such as 42 USC 1983. It was proper for the Court of Claims to assume jurisdiction over this case.

As to the questions of the jurisdiction of the Court of Claims over the state officials, it must be noted that plaintiff did not sue the state officials in

their individual capacities, so a suit against them in federal court for damages would be barred by the Eleventh Amendment because the state would be the party in fact. *Scheuer v Rhodes,* 416 US 232, 238; 94 S Ct 1683; 40 L Ed 2d 90 (1974); *Edelman v Jordan,* 415 US 651; 94 S Ct 1347; 39 L Ed 2d 662 (1974). Although the Court of Claims statute does not specifically mention state officials, this Court has interpreted the statute to grant jurisdiction over claims against state officials. *Hamilton v Reynolds,* 129 Mich App 375, 378; 341 NW2d 152 (1984), and cases cited therein.

B. *42 USC 1983 Action Against a State Agency*

The Federal Civil Rights Act provides in 42 USC 1983:

"Every person who, under color of any statute * * * of any state * * * subjects * * * any citizen * * * to the deprivation of any rights * * * secured by the Constitution and laws, shall be liable to the party injured * * *."

Whether a state or any of its agencies is a "person" under this statute has been the subject of ongoing debate in both federal and state courts. As previously mentioned, it is well established that states cannot be sued in federal court because of the Eleventh Amendment. *Stefaniak v Michigan,* 564 F Supp 1194, 1198 (WD Mich, 1983). However, federal courts have dismissed state agencies as defendants, not on Eleventh Amendment grounds, but because they are not "persons" under § 1983. *Laje v R E Thomason General Hospital,* 665 F2d 724, 727 (CA 5, 1982); *Ruiz v Estelle,* 679 F2d 1115 (CA 5, 1982); *Reynolds v Richmond Sheriff,* 574 F Supp 90, 91 (ED Va, 1983); *Mattas v Supreme Court of Pennsylvania,* 576 F Supp 1178, 1182 (WD

Pa, 1983); *Richards v New York State Dep't of Correctional Services,* 572 F Supp 1168, 1172 (SD NY, 1983); *Wrenn v Kansas,* 561 F Supp 1216, 1220 (D Kan, 1983); *Stanislaus Food Products Co v Public Utilities Comm,* 560 F Supp 114 (ND Cal, 1982); *Clark v Michigan,* 498 F Supp 159, 161 (ED Mich, 1980).

The lower federal courts often rely on other lower federal courts because the United States Supreme Court has taken varying stands on this issue. In *Monroe v Pape,* 365 US 167; 81 S Ct 473; 5 L Ed 2d 492 (1961), the Supreme Court ruled that municipalities were not "persons" under 42 USC 1983. The Michigan Supreme Court expanded that ruling to hold that neither the state nor the State Fair Commission could be sued under § 1983. *Hirych v State Fair Comm,* 376 Mich 384, 392; 136 NW2d 910 (1965). But in *Monell v New York City Dep't of Social Services,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978), the Supreme Court specifically overruled in part *Monroe,* casting the *Hirych* holding into doubt.

In *Quern v Jordan,* 440 US 332; 99 S Ct 1139; 59 L Ed 2d 358 (1979), Justice Rehnquist, writing for the seven-member majority, and Justice Brennan, concurring separately, engaged in vigorous debate over whether the Congress which passed the Civil Rights Act of 1871 intended to include states when it used the word "person". Justice Brennan quoted from a variety of sources indicating states were to be included, but Justice Rehnquist considered this all to be "slender 'evidence' that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States". 440 US 341. The United States Supreme Court has not directly addressed this issue since *Quern.*

This Court in *Smith v Michigan,* 122 Mich App

340; 333 NW2d 50 (1983), *lv pending,* while acknowledging that other courts have ruled that states are not "persons" based on the majority holding in *Quern,* held that *Quern* had not decided whether a state is a person, and ruled that the State of Michigan may be sued in its courts for § 1983 actions. Since application for leave to appeal this decision to the Supreme Court was timely filed, *Smith* is of no precedential value. *People v Phillips,* 416 Mich 63, 74; 330 NW2d 366 (1982). This Court recently agreed with *Smith* that *Quern* did not decide whether a state was a § 1983 "person", *Karchefske v Dep't of Mental Health,* 143 Mich App 1; 371 NW2d 876 (1985).

State courts which have considered this question have not taken this position. In addition to cases cited in *Smith, supra,* pp 348-349, see also *Rains v Washington,* 100 Wash 2d 660; 674 P2d 165 (1983); *Mezey v California,* 208 Cal Rptr 40; 161 Cal App 3d 1060 (1984); *Shaw v St Louis,* 664 SW2d 572, 576 (Mo App, 1983). Our research disclosed only two state courts which permitted § 1983 actions against state agencies based on *Monell;* neither discussed *Quern. Stanton v Godfrey,* 415 NE2d 103 (Ind App, 1981) (state Department of Public Welfare is a "person" under § 1983, citing *Monell),* but see *Indiana v Hall,* 411 NE2d 366, 369 (Ind App, 1980) ("Sec 1983 does not apply to states"); *Brown v Wood,* 592 P2d 1250 (Alas, 1979) (state university can be sued under § 1983 in light of *Monell,* reversing earlier decision denying action based on *Monroe).*

To the extent that *Smith* and *Karchefske* hold that a state is a person, we cannot agree. The *Karchefske* panel nevertheless held that a § 1983 action against the state was precluded on what it considered to be the separate ground of sovereign immunity; but *Quern* and other cases have deter-

mined that a state must not be a "person" precisely *because* Congress has never exhibited any intent in § 1983 to abolish the doctrine of sovereign immunity. We agree with *Quern* that, if a federal statute is to abrogate states' sovereign immunity, so that states too are "persons" under § 1983, there should be "explicit and clear language indicating on its face an intent to sweep away the immunity of the States". *Quern*, 440 US 345. There being no such language in the statute, the traditional notion of sovereign immunity precludes a conclusion that states are included in the § 1983 rubric "person".

Further, the State of Michigan, through its own statutes, has not voluntarily relinquished its sovereign immunity, except in certain areas not applicable here. *Karchefske, supra.*

Therefore, since § 1983 actions may not be brought against states or their agencies, the judgment against the Department of State Police is vacated.

### C. *42 USC 1983 Actions Against State Officials*

Individuals are, of course, persons within the meaning of 42 USC 1983. *Ruiz v Estelle, supra.* State officers who abuse their positions while acting under color of state authority are proper defendants in a 42 USC 1983 civil rights suit. *Drollinger v Milligan*, 552 F2d 1220, 1226 (CA 7, 1977); *Monroe v Pape*, 364 US 172. To establish a § 1983 claim against a state official, plaintiff must show more than mere authority by the defendant over others who have violated plaintiff's rights; plaintiff must prove at least one specific act or omission which was a causative factor in depriving plaintiff of his federal civil rights. *Clark v Michigan, supra,* p 161. Moreover, in a § 1983 action for money damages, public officials have qualified immunity

if they acted in good faith. *Baker v Detroit,* 458 F Supp 379, 383 (ED Mich, 1978).

In attempting to refine the scope of government officials' immunity, our Supreme Court recently observed that an individual should not be held liable merely because it is later determined that he acted under an unconstitutional statute. *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 633, fn 41; 363 NW2d 641 (1984).

Since in this case defendants' liability was based solely on the hearing examiner's determination that "partisan considerations" were a substantial factor in denial of plaintiff's promotion, no inquiry was made by the Court of Claims as to the possibility that defendant Director of State Police might be immune from this § 1983 action for damages, nor have either of the parties raised the issue in their briefs. However, in light of the aforementioned law on this issue, we think it critical in this case that the extent of the director's possible liability be explored. While we would not normally reverse a trial court's decision that a person's due process rights were violated based on arguments not raised by either party, in this case the finding of liability could potentially affect all taxpayers in this state, if the state has agreed to indemnify officials such as this. We therefore remand for further proceedings consistent with the points we have made in this regard.

### D. *Damages*

Even if defendant director is still determined to be liable to plaintiff for damages in this case, we find some of the damages awards excessive or insupportable.

The Court of Claims awarded plaintiff $56,052 in exemplary damages. "[T]he basic purpose of a section 1983 damages award should be to compen-

sate persons for injuries caused by the deprivation of constitutional rights * * *." *Carey v Piphus,* 435 US 247, 254; 98 S Ct 1042; 55 L Ed 2d 252 (1978). However, where the common law has historically permitted punitive or exemplary damages, such damages may be allowed in a § 1983 action. *Newport v Facts Concerts, Inc,* 453 US 247, 258-259; 101 S Ct 2748; 69 L Ed 2d 616 (1981). Plaintiff relies on the general rule that bad faith, malicious action or outrageous conduct in gross disregard of plaintiff's constitutional rights can support an award for punitive damages. There is no evidence, however, that the state police or its director acted in bad faith, maliciously, or outrageously. There is no evidence of an intent to cover up use of the "red-squad" file, *cf. Webster v Houston,* 689 F2d 1220 (CA 5, 1982), where, despite a showing that police attempted to mask the killing of a teenager, the court refused to award punitive damages. Here, it was defendants who moved for a hearing for plaintiff. The trial judge found no bad faith or malice, but merely that the police were carrying out orders, though without standards. He concluded that "no one can blame the state police". Exemplary damages were clearly erroneous in this case.

The back pay award of $584.64 also appears suspect. How this figure was arrived at does not appear in the record. Plaintiff was interviewed on August 6, 1973. At the time the information from his file was released, August 9, 1973, no promotional register existed, so the earliest that plaintiff could have been hired was August 29, 1973, when the register took effect. Plaintiff's employment with the Highway Department commenced on November 4, 1973. His back pay award should cover only the period from August 29 through November 4. The court instead measured the time period

beginning from August 6, the date on which plaintiff was interviewed. This was erroneous.

Damages for emotional and mental distress are proper in § 1983 cases where plaintiff offers competent evidence to support their award. *Carey v Piphus, supra; Nekolny v Painter,* 653 F2d 1164 (CA 7, 1981), *cert den* 455 US 1021; 102 S Ct 1719; 72 L Ed 2d 139 (1982). In this case, both plaintiff and his wife offered testimony that plaintiff began losing sleep, became paranoid about the police, and was alienated from his fellow workers. Although few cases have yielded such high awards for injuries such as these, the award in this case was supported by competent evidence and was not improper.

Damages of $40,544 for career loss were also calculated from an improper starting date. The only clear evidence of long-term injury by not being hired in August, 1973, by the state police was that in 1981 plaintiff was "bumped" from a level 13 to a level 12 position by another employee with just a few more weeks' seniority than plaintiff. Damages for career loss should be computed from 1981, not from 1973. Plaintiff estimated that cost him about $2,000 per year.

### CONCLUSION

The judgment against the Department of State Police is vacated. As to the liability of the Director of the State Police, and appropriate damages if liability is found, we remand for further proceedings in light of this opinion.

GRIBBS, J. *(concurring).* I concur with the majority opinion remanding for inquiry as to the possibility that defendant Director of State Police might be immune from the § 1983 action for dam-

ages and the majority's holding regarding the propriety of damages against defendant director.

I also concur in the majority's holding that the judgment against the Department of State Police be vacated, but on different grounds. I would not reach the question of whether or not the state is a "person" under § 1983, but hold that whether or not the state is a "person" this action against the state is precluded on the grounds of sovereign immunity. *Karchefske v Dep't of Mental Health,* 143 Mich App 1; 371 NW2d 876 (1985).