GUILBAULT v DEPARTMENT OF MENTAL HEALTH

Docket No. 83152. Submitted April 1, 1986, at Lansing. Decided June 16, 1987. Leave to appeal applied for.

Earl T. Guilbault, Jr., was admitted to Northville Regional Psychiatric Hospital, a mental health facility operated by the Department of Mental Health, for treatment of drug-induced psychosis. He was released after a few days when it appeared that he was responding to medication. Shortly after his release, he died as a result of a self-inflicted gunshot wound to the head. Phyllis Guilbault, as personal representative of the decedent's estate, brought an action in the Court of Claims against the Department of Mental Health alleging wrongful death and breach of contract. Defendant's motion for accelerated or summary judgment and motion to strike the pleadings were granted by the trial court, Thomas L. Brown, J. Plaintiff appealed.

The Court of Appeals *held:*

1. Plaintiff's claim that there was an implied contract by which defendant was to provide proper psychiatric care, supervision, and treatment for the decedent and that his death was a result of a breach of that contract must necessarily fail since plaintiff cannot establish the element of consideration in view of defendant's preexisting, statutory duty to provide mental health services to anyone in need of such services without regard to their ability to pay.

2. Summary disposition of plaintiff's 42 USC 1983 claim was

REFERENCES

Am Jur 2d, Contracts §§ 18 *et seq.*

Am Jur 2d, Hospitals and Asylums §§ 20-25.

Am Jur 2d, Municipal, School, and State Tort Liability §§ 27 *et seq.*

Am Jur 2d, Restitution and Implied Contracts §§ 159, 160.

Am Jur 2d, States, Territories, and Dependencies §§ 99 *et seq.*

Liability of hospital or sanitarium for negligence of physician or surgeon. 51 ALR4th 235.

Hospital's liability for mentally deranged patient's self-inflicted injuries. 36 ALR4th 117.

Liability of mental care facility for suicide of patient or former patient. 19 ALR4th 7.

Validity and construction of contract exempting hospital or doctor from liability for negligence to patient. 6 ALR3d 704.

proper since the doctrine of sovereign immunity prevents the state from being liable in § 1983 actions.

3. Plaintiff's allegations concerning the defective and dangerous condition of the hospital stem from the activities or operations conducted within the hospital and not from the hospital building itself. The allegations therefore do not support a claim under the public-buildings exception to governmental immunity.

4. Summary disposition of plaintiff's claim that defendant's policy of quick and early release of mental patients constituted an intentional nuisance was proper since the allegations in support of this claim, if true, merely state a claim of negligence.

5. Defendant cannot be held vicariously liable for the alleged tortious conduct of its employees in releasing the decedent in the absence of any allegations that the employees were acting outside the course or scope of their employment. Summary disposition of plaintiff's claim under the theory of respondeat superior was therefore proper.

Affirmed.

1. PLEADING — IMPLIED CONTRACTS.

A plaintiff fails to state a claim based on an implied contract theory where he does not plead facts sufficient to satisfy the elements of mutual assent and consideration.

2. MENTAL HEALTH — DEPARTMENT OF MENTAL HEALTH — DUTY TO PROVIDE SERVICES.

The Department of Mental Health is under a duty imposed by statute to provide mental health services to all persons in need of such services without regard to their ability to pay (MCL 330.1810; MSA 14.800[810]).

3. GOVERNMENTAL IMMUNITY — CIVIL RIGHTS — SOVEREIGN IMMUNITY.

The doctrine of sovereign immunity prevents the state from being liable in an action brought under the federal statute for violation of federal constitutional rights (42 USC 1983).

4. GOVERNMENTAL IMMUNITY — PUBLIC BUILDINGS.

A claim under the public-buildings exception to governmental immunity is not stated where the plaintiff's allegations concerning the defective and dangerous condition of a public building stem from the activities or operations conducted within the building and not from the building itself (MCL 691.1406; MSA 3.996[106]).

5. GOVERNMENTAL IMMUNITY — MENTAL HEALTH — EARLY RELEASE OF PATIENTS — NUISANCE.

Allegations that a state-operated mental health facility had a policy of quick and early release of its patients do not constitute allegations of nuisance in avoidance of the defense of governmental immunity.

6. GOVERNMENTAL IMMUNITY — VICARIOUS LIABILITY — TORTS.

A governmental agency can be held vicariously liable only when its officer, employee, or agent, acting during the course of employment and within the scope of authority commits a tort while engaged in an activity which is nongovernmental or proprietary, or which falls within a statutory exception to the grant of governmental immunity.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George L. McCargar* and *Mark S. Meadows,* Assistant Attorneys General, for defendant.

Before: J. H. GILLIS, P.J., and R. B. BURNS and G. B. FORD,* JJ.

G. B. FORD, J. Plaintiff filed this action following the death of her son. On April 16, 1982, decedent was admitted to Northville Regional Psychiatric Hospital, a mental health institution operated by defendant, for treatment of drug-induced psychosis. Treated with medication to which he apparently responded, decedent's psychosis subsided. Following consultation with a probate court social worker, decedent's attending physician discharged him on April 22, 1982. On June 10, 1982, decedent died as a result of a self-inflicted gunshot wound to the head.

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

Plaintiff, as personal representative of decedent's estate, filed this action alleging wrongful death and breach of contract. Defendant moved for accelerated or summary judgment under GCR 1963, 116.1(5), 117.2(1) and 117.2(3), now MCR 2.116(C)(7), (8) and (10), respectively. Defendant also moved to strike the pleadings under GCR 1963, 115.2, now MCR 2.115(B). Defendant's motions were granted and plaintiff now appeals.

I

We first consider whether the trial court erred in granting judgment in favor of defendant on plaintiff's breach of contract claim. Plaintiff argues that there was an implied contract for defendant to provide proper psychiatric care, supervision, and treatment for decedent and that his death was a result of a breach of that contract. While plaintiff correctly points out that a breach of contract claim successfully avoids a defense of governmental immunity,[1] the issue whether plaintiff has stated a claim that sounds in contract remains extant.

In *Lowery v Dep't of Corrections,* 146 Mich App 342, 359; 380 NW2d 99 (1985), this Court discussed the elements of an implied contract:

[A] contract based on implication must still satisfy the elements of mutual assent and consideration, *Spruytte v Dep't of Corrections,* 82 Mich App 145; 266 NW2d 482 (1978). In *Spruytte,* the Court found that no implied bailment contract could be found to exist because (1) there was no mutual assent since the procedure for bailment of property upon incarceration was required as an aspect of prison management and control, and (2) there

---

[1] See *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984).

could be no finding of consideration since defendant was performing a preexisting duty.

Thus, if defendant had the preexisting duty to provide treatment to decedent, there can be no consideration for any implied contract and, therefore, no contract. MCL 330.1810; MSA 14.800(810) establishes a duty upon defendant to provide mental health services to all persons in need of such services without regard to their ability to pay:

> No person shall be denied services because of an inability to pay for such services on the part of the individual, the spouse, or the parents.

As defendant had a preexisting duty to provide decedent with mental health services, there could be no contract. Summary judgment on this claim was proper.

II

Next, we turn our attention to the question of whether plaintiff has stated a claim against defendant under 42 USC 1983. While we note that a conflict exists in this Court about whether the state is a "person" under that statute,[2] we need not decide that issue. Rather, we believe that plaintiff's claim is barred by the doctrine of sovereign immunity, even if the state is a person for § 1983 purposes.

In *Karchefske v Dep't of Mental Health,* 143 Mich App 1; 371 NW2d 876 (1985), this Court held that, while the state is a person under § 1983, a

---

[2] Compare *Will v Dep't of Civil Service,* 145 Mich App 214, 223-224; 377 NW2d 826, lv gtd 422 Mich 973 (1985) (state not a "person" for purposes of 42 USC 1983), with *Smith v Michigan,* 122 Mich App 340; 333 NW2d 50 (1983), lv gtd 422 Mich 973 (1985) (state is a "person" for 42 USC 1983 purposes).

§ 1983 action is nevertheless barred by the doctrine of sovereign immunity. This Court reached the same result in *Lowery, supra,* again holding that the doctrine of sovereign immunity prevents the state from being liable in § 1983 actions. We concur in the reasoning of those two panels and conclude that the trial court properly granted summary disposition in favor of defendant on plaintiff's § 1983 claim.

III

Plaintiff's next argument is that her claim against defendant falls within the defective public buildings exception to the governmental immunity doctrine. See MCL 691.1406; MSA 3.996(106). We disagree.

In *Landry v Detroit,* 143 Mich App 16; 371 NW2d 466 (1985), lv gtd 424 Mich 876 (1986), this Court rejected the plaintiff's claim based upon the public buildings exception where the plaintiff was assaulted by a criminal defendant outside the courtroom. Since the Supreme Court has granted leave to appeal, *Landry* lacks precedential value.[3] We nevertheless find the following language from the *Landry* opinion persuasive:

> However, plaintiffs do not allege that their injuries were sustained from a structural part of the building or a fixture attached thereto. *Zawadzki v Taylor,* 70 Mich App 545, 551; 246 NW2d 161 (1976), *lv den* 399 Mich 875 (1977). Plaintiffs do not allege that the courtroom was being used in a manner for which it was not intended. Unlike in the cases cited by plaintiffs, *Bush [v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979)] *supra,* and *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979), the courtroom in the present

[3] See *People v Phillips,* 416 Mich 63; 330 NW2d 366 (1982).

case was being used as expected, as a courtroom. Plaintiffs' allegations concerning the defective or dangerous condition of Recorder's Court stem not from the condition of the building itself but from the activities or operations conducted within the building. Consequently, plaintiffs have not stated a claim within the public-buildings exception. *Vargo v Svitchan,* 100 Mich App 809, 822-823; 301 NW2d 1 (1980), *app dis* 411 Mich 1035 (1982). [143 Mich App 22.]

Here, as in *Landry,* plaintiff's allegations concerning the defective and dangerous condition of the hospital stem from the activities or operations conducted within the hospital and not from the building itself. Plaintiff alleged that the building was defective because it was not large enough to adequately house all of the patients, thus forcing defendant to approve quick and early release of the patients. These allegations do not support a claim of a defective or dangerous condition of a public building, but merely indicate a claim of negligence in authorizing early release of patients. The trial court was correct in finding that the claim did not fall within the defective or dangerous building exception of the governmental immunity statute.

IV

To avoid the operation of the governmental immunity doctrine, plaintiff asserts that defendant's policy of quick and early release of mental patients constituted an intentional nuisance. We begin our analysis by rejecting defendant's claim that the intentional nuisance exception to the governmental immunity doctrine did not survive the Supreme Court's decision in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363

NW2d 641 (1984). This Court has determined that the intentional nuisance exception did survive the Court's decision in *Ross. Garcia v City of Jackson,* 152 Mich App 254; 393 NW2d 599 (1986); *Veeneman v Michigan,* 143 Mich App 694; 373 NW2d 193 (1985), lv gtd 424 Mich 876 (1986).

To establish an intentional nuisance, a plaintiff must show that there is a condition which is a nuisance and that the government intended to create that condition. *Garcia, supra,* 260.[4] The many problems associated with nuisance claims were discussed by this Court in *Schroeder v Canton Twp,* 145 Mich App 439, 441; 377 NW2d 822 (1985):

> Too often, "nuisance" terminology is used to mask what are, in fact, simple negligence claims for the purpose of avoiding some effects of calling it what it is, a negligence claim. Too often this rationale is employed to avoid the legislative decision to impose governmental immunity. The within case gives every indication of being such a case. The alleged failure to act soon enough to put up marker lights or to remove motor vehicles from the highway after a night accident on the highway is a long, long way from traditional nuisance theories. See Justice FITZGERALD's manful effort to reconcile and resolve "nuisance law" in *Rosario v City of Lansing* [403 Mich 124; 268 NW2d 230 (1978)] and Dean Prosser's statement:
> " 'There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word "nuisance." It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agree-

---

[4] As noted by the *Garcia* Court, there exists a conflict in this Court over the issue of what constitutes an intentional nuisance. However, we agree with Judge R. B. BURNS' determination of the elements of intentional nuisance as stated in his opinion in *Garcia.* 152 Mich App 260, n 1.

ment that it is incapable of any exact or comprehensive definition.' Prosser, Torts (4th ed), § 86, p 571."

In *Schroeder,* this Court rejected the plaintiff's argument that the failure by police officers to set up markers or to remove motor vehicles after a nighttime accident constituted a nuisance. Rather, the Court found the assertions constituted allegations of negligence.

Here, plaintiff's allegations of nuisance are just as far, if not farther, away from traditional nuisance theories as those in *Schroeder.* Plaintiff claims that defendant created and maintained an intentional nuisance by following a policy of quick and early release of mentally ill patients without regard to their condition and without providing proper supervision and outpatient care. Defendant's policy, if in fact it exists, does not constitute a "condition," but rather constitutes a course of conduct which may be negligent. The trial court properly granted summary disposition on this issue.

V

Finally, we turn to plaintiff's argument that defendant is liable on the theory of respondeat superior for the tortious acts of its agents and employees. The Supreme Court in *Ross, supra,* 625, set forth the narrow conditions under which a governmental agency may be vicariously liable for the acts of its employees:

A governmental agency can be held vicariously liable only when its officer, employee, or agent, acting during the course of employment and within the scope of authority, commits a tort while engaged in an activity which is nongovernmental

or proprietary, or which falls within a statutory exception. The agency is vicariously liable in these situations because it is in effect furthering its own interests or performing activities for which liability has been statutorily imposed. However, if the activity in which the tortfeasor was engaged at the time the tort was committed constituted the exercise or discharge of a governmental function (*i.e.,* the activity was expressly or impliedly mandated or authorized by constitution, statute, or other law), the agency is immune pursuant to § 7 of the governmental immunity act. See *Hirych v State Farm Comm,* 376 Mich 384, 391-393; 136 NW2d 910 (1965), and *Sherbutte v Marine City,* 374 Mich 48, 50; 130 NW2d 920 (1964) (city cannot be held vicariously liable for torts of its police officers committed during the course of an arrest because the officers were engaged in police activity, which is a governmental function entitled to immunity).

There is no suggestion that defendant's employees were acting outside the course or the scope of their employment in discharging plaintiff's decedent. At issue is whether the employees were engaged in a governmental function. In companion cases to *Ross,* the Supreme Court concluded that the Department of Mental Health and mental health care facilities have an express and implied responsibility under the Mental Health Code to care for, control and supervise residents of a state facility. Accordingly, the department was entitled to immunity from tort liability for injuries arising while its employees were engaged in such activities. *Siener v Dep't of Mental Health,* 420 Mich 567, 643; 363 NW2d 641 (1984); *Rocco v Dep't of Mental Health,* 420 Mich 567, 646-647; 363 NW2d 641 (1984). Section 476 of the Mental Health Code, MCL 330.1476; MSA 14.800(476), also authorizes defendant to release patients when the patients

are deemed "clinically suitable for discharge." As the activity complained of in this case is expressly authorized by law, defendant's employees were engaged in a governmental function and defendant cannot be held vicariously liable for its employees' discharge of the decedent. Summary disposition on this issue was appropriate.

Affirmed. No costs, a question of public importance being involved.