BOWDEN v McANDREW

Docket No. 95172. Submitted July 12, 1988, at Detroit. Decided
    December 19, 1988. Leave to appeal applied for.

Clarice Bowden was employed as a teller by First Savings Associ-
    ation of Ypsilanti when she was injured in a robbery attempt.
    Bowden and her husband brought an action in the Wayne
    Circuit Court against Atwood R. McAndrew and First Savings.
    Plaintiff claimed an intentional tort and a private cause of
    action under the Bank Protection Act against First Savings.
    The court, Irwin H. Burdick, J., denied First Savings' motion
    for summary disposition and First Savings appealed by leave
    granted.

    The Court of Appeals *held:*

    1. Clarice Bowden's claim of intentional tort against First
    Savings is barred by the exclusive remedy provision of the
    Workers' Disability Compensation Act. An intentional tort
    exists only when an employee is injured as a result of a
    deliberate act of the employer and the employer specifically
    intended an injury. There was no allegation that First Savings
    intended the injury.

    2. A derivative claim for loss of consortium by the spouse of
    an injured worker who sues the employer in tort is barred
    where the worker's claim is barred by the exclusive remedy
    provision of the Workers' Disability Compensation Act.

    3. In determining whether Congress intended to create a
    private remedy in a statute not expressly providing one, a court
    should consider whether 1) the plaintiff is one of the class for
    whose especial benefit the statute was enacted, 2) there is any
    indication of legislative intent to create or to deny one, 3) to
    infer such a remedy is consistent with the underlying purpose
    of the legislative scheme, and 4) the cause of action is one
    traditionally relegated to state law in an area basically the
    concern of the states so that inferring a cause of action based

REFERENCES

Am Jur 2d, Actions §§ 73 *et seq.*

Am Jur 2d, Workmen's Compensation §§ 52, 55, 60, 61.

Worker's compensation law as precluding employee's suit against
    employer for third person's criminal attack. 49 ALR4th 926.

solely on federal law would be inappropriate. Here, no private cause of action was created by Congress under the Bank Protection Act.

Reversed.

1. Workers' Compensation — Intentional Torts — Exclusive Remedy.

An action by an employee for an intentional tort by an employer is not barred by the exclusive remedy provision of the workers' compensation act; an intentional tort exists only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury; an employer is deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge (MCL 418.131; MSA 17.237[131]).

2. Torts — Workers' Compensation — Derivative Claims — Exclusive Claims.

A derivative claim for loss of consortium by the spouse of an injured worker who sues the employer in tort is barred where the worker's claim is barred by the exclusive remedy provision of the Workers' Disability Compensation Act (MCL 418.131; MSA 17.237[131]).

3. Actions — Private Causes of Action — Federal Statutes.

In determining whether Congress intended to create a private remedy in a statute not expressly providing one, a court should consider whether 1) the plaintiff is one of the class for whose especial benefit the statute was enacted, 2) there is any indication of legislative intent to create or to deny one, 3) to infer such a remedy is consistent with the underlying purpose of the legislative scheme, and 4) the cause of action is one traditionally relegated to state law in an area basically the concern of the states so that inferring a cause of action based solely on federal law would be inappropriate.

4. Banks and Banking — Bank Protection Act — Private Causes of Action — Tellers.

A bank teller is not one of a class for whose especial benefit the Bank Protection Act was enacted and has no private cause of action under it (12 USC 1881 et seq.).

*Goodman, Eden, Millender & Bedrosian* (by *Joan Lovell*), for plaintiff.

*Siemion, Huckabay, Bodary, Padilla & Morganti,*

P.C. (by *Mark A. Roberts* and *Thomas M. Caplis*), for First Savings Association of Ypsilanti.

Before: Gribbs, P.J., and Shepherd and J. R. Cooper,* JJ.

Gribbs, P.J. Defendant First Savings Association of Ypsilanti appeals by leave granted from a Wayne Circuit Court order denying its motion for summary disposition. We reverse.

The primary issues before us in this case are whether the Bank Protection Act of 1968 (BPA), 12 USC 1881 *et seq.*, provides plaintiff Clarice Bowden with a private cause of action and whether her claims are barred by the exclusive remedy provision of the Workers' Disability Compensation Act, MCL 418.131; MSA 17.237(131).

Plaintiff Clarice Bowden was employed by defendant First Savings Association as a bank teller at the bank's office on West Michigan in Ypsilanti. She was apparently the only person present at the bank at 12:40 P.M. on March 28, 1984, when an attempted robbery took place. At that time, Larry Donald Konopski entered the bank carrying an empty pellet gun and demanded that plaintiff give him $250,000. She pulled a money clip located in a drawer to activate a silent alarm. The police eventually arrived and, upon seeing them, Konopski pulled a knife and cut her face and body. The police shot and killed Konopski. Following the incident, the bank voluntarily paid to her workers' disability compensation benefits during the time she was unable to work.

She subsequently filed a two-count complaint, alleging that the bank intentionally breached its duties to provide adequate security devices and to instruct her in their safe use, in violation of the

* Circuit judge, sitting on the Court of Appeals by assignment.

BPA, and that the bank was liable to her under a premises liability theory. Her husband, Stanley Bowden, joined in the suit for loss of consortium.

The bank filed a motion for summary disposition under MCR 2.116(C)(4), (8) and (10), arguing that the BPA does not provide a private right of action and that plaintiff's exclusive remedy against the bank was under the Workers' Disability Compensation Act. The trial court denied the bank's motion.

On appeal, the bank contends that Clarice Bowden's claim against the bank for an intentional tort is barred by the exclusive remedy provision of the Workers' Disability Compensation Act. We agree.

The Workers' Disability Compensation Act, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*, provides that an injured employee's "exclusive remedy against the employer" is the right to recover benefits under the WDCA. MCL 418.131; MSA 17.237(131); *Whaley v McClain,* 158 Mich App 533, 535; 405 NW2d 187 (1987). However, our Supreme Court recently held that employees' actions against their employers for intentional torts are not barred by the exclusive remedy provision, § 131, of the WDCA. *Beauchamp v Dow Chemical Co,* 427 Mich 1, 11; 398 NW2d 882 (1986). The Court further adopted the "substantial certainty" definition for an intentional tort: "If the injury is substantially certain to occur as a consequence of actions the employer intended, the employer is deemed to have intended the injuries as well." *Beauchamp,* 427 Mich 22. The Court stressed that substantial certainty should not be confused with substantial likelihood. *Beauchamp,* 427 Mich 20, 22, 25. See also *Boyer v Louisville Ladder Co, Inc,* 157 Mich App 716, 718-719; 403 NW2d 210 (1987), lv den 428 Mich 905 (1987). In adopting the "sub-

stantial certainty" definition of an intentional tort, the Court rejected the "true intentional tort" definition, i.e., that the employer truly intended the injury as well as the act.

After *Beauchamp* was decided, the Legislature amended the exclusive remedy provision of the WDCA, § 131. The amended provision, which specifically includes an exception for the intentional torts of employers, states:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and wilfully disregarded that knowledge. This issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law. [MCL 418.131(1); MSA 17.237(131)(1).]

Another panel of this Court recently addressed the application of the amendment, explaining that the amendatory language was prompted by the desire to correct or clarify the existing uncertainty regarding the original act and that it operates retroactively. *Schefsky v Evening News Ass'n,* 169 Mich App 223; 425 NW2d 768 (1988). We agree. In any event, using either the "substantial certainty" standard set forth in *Beauchamp* or the amendatory language, we believe that plaintiff's complaint sets forth a cause of action sounding in negligence, not an intentional tort and, thus, is barred by the exclusive remedy provision of the WDCA, § 131.

In this case, Bowden did not plead that the bank specifically intended to injure her or that it had actual knowledge that an injury was certain to occur. Nor did she allege that the bank had ever been warned or cited for violations of the BPA, or that the bank in which she worked had ever been robbed before. Even accepting her statements in her complaint as true, as we must, we do not believe that she stated a cause of action for an intentional tort. Since her cause of action is barred by the exclusivity provision, her husband's derivative claim is also barred. *Bourassa v ATO Corp,* 113 Mich App 517, 520; 317 NW2d 669 (1982), lv den 414 Mich 966 (1982).

Next, the bank argues that the BPA, upon which Bowden also bases a claim, does not provide for a private cause of action. We agree.

In her complaint, she alleged that the bank is a member of the Federal Savings & Loan Insurance Corporation and the Federal Home Loan Bank system and, thus, is subject to the BPA. The BPA, 12 USC 1882(a), provides:

> Within six months from July 7, 1968, each Federal supervisory agency shall promulgate rules establishing minimum standards with which each bank or savings and loan association must comply with respect to the installation, maintenance, and operation of security devices and procedures, reasonable in cost, to discourage robberies, burglaries, and larcenies and to assist in the identification and apprehension of persons who commit such acts.

The minimum security devices and procedures for a Federal Savings & Loan Insurance Corporation are set forth in 12 CFR 563a.

Bowden alleged in her complaint that the bank

violated the BPA and its rules in the following manner:

   1. Failing to provide bullet-resistant barriers between tellers and the public;

   2. Failing to provide trained security guards during business hours;

   3. Failing to provide Plaintiff with any training in the use of the alarm system and any other security devices that may have been present;

   4. Failing to provide an alarm system capable of being activated without detection by persons in the act of robbing the bank;

   5. Failing to instruct Plaintiff as to how to conduct herself during a robbery so as to avoid increasing danger to herself; and

   6. Allowing Plaintiff to be in the bank alone and unaided for a long period of time in the middle of the day which [sic] she had not been trained in security procedures and had worked in the bank for only a brief time.

In this appeal, the parties do not address whether, in fact, the bank violated the BPA. The threshold issue being addressed is whether the BPA even provides for a private cause of action.

In determining whether Congress intended to create a private remedy in a statute not expressly providing one, several factors are relevant:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific* [*R Co v Rigsby*, 241 US 33, 39; 36 S Ct 482; 60 L Ed 874] (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, *e.g., National Railroad Passenger* [*Corp v National Ass'n of Railroad Passengers*, 414 US 453, 458, 460; 94 S Ct 690; 38 L Ed 2d 646] (1974) (*Amtrak*).

Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, *e.g., Amtrak, supra; Securities Investor Protection* [*Corp v Barbour,* 421 US 412, 423; 95 S Ct 1733; 44 L Ed 2d 263] (1975); *Calhoon* [*v Harvey,* 379 US 134; 85 S Ct 292; 13 L Ed 2d 190] (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [*Cort v Ash,* 422 US 66, 78; 95 S Ct 2080; 45 L Ed 2d 26 (1975). Some citations omitted.]

The central inquiry, however, is whether Congress intended to create, either expressly or impliedly, a private cause of action when it enacted the statute at issue. *Touche Ross & Co v Redington,* 442 US 560, 575-576; 99 S Ct 2479; 61 L Ed 2d 82 (1979); *Marx v Centran Corp,* 747 F2d 1536, 1544 (CA 6, 1984), cert den 471 US 1125; 105 S Ct 2656; 86 L Ed 2d 273 (1985).

Regarding the first *Cort* factor, whether Bowden is one of the class for whose "especial" benefit the statute was enacted, the question is not simply who would benefit from the statute, but whether Congress intended to confer federal rights upon these beneficiaries. *California v Sierra Club,* 451 US 287, 294; 101 S Ct 1775; 68 L Ed 2d 101 (1981); *Howard v Pierce,* 738 F2d 722, 724 (CA 6, 1984). The language of the BPA itself is silent concerning for whose benefit the act was enacted. The only hint of the purpose of the statute is contained in § 1882(a), wherein the act requires that each bank or savings and loan association comply with rules establishing minimum security standards to discourage robberies, burglaries and larcenies and to assist in the identification and apprehension of persons who commit such acts.

The legislative history is more instructive. Sen-

ate Report No. 1263, 1968 US Code Congressional and Administrative News 2530, 2531-2532 notes the following:

> Statistics from the Federal Bureau of Investigation reveal that crimes against financial institutions have been rising steadily during the period of the last 10 or 15 years. . . .
>
> While most banking institutions are insured against losses from robberies and similar crimes, the dollar value of these losses is large and is increasing at a rapid rate. In 1967 the total financial losses to banking institutions as a result of robberies, burglaries, and larcenies were approximately $15,007,508. However, more important than these monetary losses are the injuries and deaths often suffered by bank employees and customers during bank holdups. Law enforcement officials and innocent bystanders in the streets also sometimes fall victim to the shootings and high-speed automobile chases that follow the robbery of a financial institution.
>
> \* \* \*
>
> Another important reason for reducing bank crimes is the expense of investigating these crimes, which frequently involves the expenditure of more public funds than was taken during the offense. The Department of Justice called the attention of the subcommittee to one case where more than $250,000 was expended during the investigation of one bank robbery. Robberies and other crimes against banks also tend to increase the cost of banking services to bank customers.

Although Bowden, as a bank teller, appears to be one who would benefit from the statute, we do not believe that she is a member of a class for whose "especial" benefit the statute was enacted. Congress was clearly concerned with the increase in bank crimes not only because of the injuries and deaths suffered by bank tellers, customers, law

enforcement officials and innocent bystanders during and after bank holdups, but also because of the dollar losses and the expense to the public of investigating these crimes. Hence, we conclude that the statute was enacted to protect the public in general, not to confer federal rights upon bank tellers and customers.

The second *Cort* factor, whether there is an explicit or implicit indication of legislative intent either to create a private remedy or deny one, requires a consideration of legislative history. *Cannon v University of Chicago,* 441 US 677, 694; 99 S Ct 1946; 60 L Ed 2d 560 (1979). The legislative history of a statute that does not expressly create or deny a private remedy will usually be equally silent or ambivalent on the question. *Cannon,* 441 US 694. Here, the statute is silent. Neither the language of the BPA itself nor the legislative history indicates whether Congress intended to create or deny a private remedy. The Supreme Court has been reluctant to imply a cause of action under statutes which create benefits for the general public as does this one. *Howard,* 738 F2d 725-726.

Moreover, in *Touche Ross & Co, supra,* the Supreme Court noted that in past cases in which it found an implied private cause of action, the statute in question at least prohibited certain conduct or created federal rights in favor of private parties. *Touche Ross,* 442 US 569. Although the BPA provides that a savings and loan association must comply with the rules promulgated under the act, it does not itself prohibit certain conduct. Nor, as discussed above, does it create federal rights in favor of Bowden. Because the legislative history of the BPA does not address the issue of private remedies, grants no private rights to any identifiable class and proscribes no conduct as unlawful,

the question whether Congress, either expressly or by implication, intended to create a private right of action has been answered in the negative. *Touche Ross,* 442 US 576. Accordingly, we conclude that Congress did not intend to create a private cause of action under the BPA in favor of Bowden.

Reversed.