PAWLAK v REDOX CORPORATION

Docket No. 117082. Submitted February 12, 1990, at Detroit. Decided
    March 20, 1990.

Sophia A. Pawlak, individually, and as the personal representa-
    tive of the estate of John P. Reynolds, deceased, brought a
    wrongful death action in the Wayne Circuit Court against
    Redox Corporation, doing business as Woodlawn Cemetery
    Association and Woodlawn Cemetery and Crematory Company,
    the City of Detroit, and Detroit Emergency Medical Service, a
    division of the City of Detroit. The decedent, a groundskeeper
    for Woodlawn Cemetery and Crematory Company, died as a
    result of injuries incurred when he fell from a truck owned by
    Woodlawn and being driven by a co-worker on cemetery
    grounds. The decedent had been riding on top of the cab of the
    truck. Cemetery employees called 911 between 2:55 and 3:10
    P.M. and the Detroit Emergency Medical Service dispatched an
    available unit. The decedent arrived at Detroit Receiving Hos-
    pital at 3:50 P.M. and died from his injuries approximately
    twelve hours later. The city and Detroit Emergency Medical
    Service filed a motion for summary disposition. The trial court,
    Charles S. Farmer, J., granted the motion, ruling that Detroit
    Emergency Medical Service was not a proper party and that
    the city was entitled to governmental immunity and also could
    not be held liable on an implied contract theory. The trial court
    also granted the remaining defendants' motion for summary
    disposition, finding that plaintiff had not alleged an intentional
    act by Woodlawn to avoid the Workers' Disability Compensa-
    tion Act's exclusive remedy provision. Plaintiff appealed.

The Court of Appeals held:

1. The city was engaged in a governmental function in the
    operation of the ambulance service. Since there is no inten-
    tional tort exception to governmental immunity, summary

REFERENCES

Am Jur 2d, Hospitals and Asylums § 22; Municipal, County, School,
    and State Tort Liability § 88; Workmens' Compensation §§ 50, 51,
    635.
What conduct is willful, intentional, or deliberate within workmens'
    compensation act provision authorizing tort action for such con-
    duct. 96 ALR3d 1064.

disposition was properly granted to the city based on governmental immunity.

2. The city had a preexisting duty to provide emergency ambulance service to decedent, therefore, no consideration was present for an implied contract and summary disposition was properly granted to the city on plaintiff's implied contract claim.

3. Plaintiff failed to establish an intentional tort by Woodlawn. Plaintiff's action was barred by the exclusive remedy provision of the WDCA.

Affirmed.

1. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS.

There is no intentional tort exception to governmental immunity; governmental immunity extends to intentional torts committed within the scope of a governmental function.

2. GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTION.

A governmental function is an activity which is expressly or impliedly mandated or authorized by constitution, statute or other law; the definition of governmental function is broadly applied, requiring only that there be some constitutional, statutory or other legal basis for the activity in which the governmental agency is engaged.

3. CONTRACTS — IMPLIED CONTRACTS.

A contract based on implication must still satisfy the elements of mutual assent and consideration.

4. CONTRACTS — IMPLIED CONTRACTS — AMBULANCE SERVICES — PREEXISTING DUTIES — CONSIDERATION.

A city which operates an emergency ambulance service as a governmental function has a preexisting duty to provide ambulance service and emergency medical assistance irrespective of an individual's ability to pay or source of payment; the provision of such a service to an individual does not constitute consideration for an implied contract (MCL 333.20708, 333.20715; MSA 14.15[20708], 14.15[20715]).

5. WORKERS' COMPENSATION — INTENTIONAL TORTS.

The only exception to the exclusive remedy provision of the Workers' Disability Compensation Act is for intentional torts; an intentional tort exists only when an employee is injured as a result of a deliberate act of an employer who specifically intended an injury; an employer intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge; the issue

whether an act was an intentional tort is a question of law for the court (MCL 418.131[1]; MSA 17.237[131][1]).

*Robert H. Golden,* for plaintiff.

*Tucker & Rolf, P.C.* (by *Peter B. Kupelian* and *A. William Rolf*), for Redox Corporation.

*Laurel F. McGiffert,* for the City of Detroit.

Before: HOLBROOK, JR., P.J., and HOOD and R. B. BURNS,* JJ.

PER CURIAM. Plaintiff's decedent, John P. Reynolds, was employed as a groundskeeper for defendant Woodlawn Cemetery and Crematory Company (Woodlawn) at its cemetery. On July 18, 1986, decedent was riding on top of the cab of a flat-bed truck owned by Woodlawn. The truck was being driven by a co-worker on cemetery grounds. Decedent's legs were dangling down the back of the cab into the truck's bed. According to plaintiff, the truck was driven in an erratic manner causing decedent to fall off the roof of the cab onto the roadway sustaining a serious closed-head injury.

Cemetery employees summoned an ambulance by calling 911 between 2:55 P.M. and 3:10 P.M. Defendant Detroit Emergency Medical Service (EMS) dispatched an available unit. Hospital records indicate that Mr. Reynolds arrived at Detroit Receiving Hospital at 3:50 P.M. Approximately twelve hours later, decedent died from his injuries.

On August 18, 1987, plaintiff, individually and as personal representative of decedent's estate, filed a wrongful death action against the City of Detroit, EMS, Woodlawn and its parent corporation, Redox Corporation, doing business as Woodlawn

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Cemetery Association. Plaintiff's six-count complaint alleged that: (1) Woodlawn intentionally and deliberately failed to rectify its employees' erratic operation of vehicles and knowingly allowed decedent to ride on top of the truck, (2) Woodlawn breached an implied contract of employment to provide emergency medical services by waiting an unreasonable length of time for EMS and failing to summon a private ambulance, (3) the City of Detroit breached an implied contract to transport decedent to a hospital within a reasonable time, (4) the City of Detroit engaged in a proprietary function by operating an ambulance service and acted in a negligent, willful and wanton manner in failing to promptly supply an ambulance and transporting decedent to a distant hospital, (5) the City of Detroit knowingly and intentionally failed to provide immediate ambulance service (intentional tort), and (6) the City of Detroit and EMS intentionally failed to provide prompt medical assistance to decedent by choosing to transport to Detroit Receiving Hospital when closer hospitals were available.[1]

On February 6, 1987, the City of Detroit and EMS filed a motion for summary disposition. Following a hearing on February 10, 1989, the trial court granted EMS summary disposition ruling that it was not a proper party. The court then held its decision as to the City of Detroit in abeyance until plaintiff filed a response.

Subsequently, on April 17, 1989, the trial court granted summary disposition in favor of the city, finding that the city could not be liable on an implied contract theory because it owed a preexisting statutory duty to provide emergency medical

---

[1] Plaintiff's allegation against Woodlawn that it was liable for personal protection insurance coverage under the no-fault act was dismissed by stipulation.

services to decedent and that as to the remaining counts the city was entitled to governmental immunity (city not engaged in a proprietary function). The court then indicated that its April 17, 1989, order was final as to the city and EMS.

On April 14, 1989, Woodlawn (and its parent company) filed a motion for a summary disposition. Following oral argument on the motion conducted on April 28, 1989, the trial court ruled that plaintiff had not alleged an intentional act by Woodlawn to avoid the Workers' Disability Compensation Act's exclusive remedy provision. Therefore, Woodlawn was granted summary disposition in a May 9, 1989, order. This final order disposed of the remaining counts in plaintiff's complaint and, thus, plaintiff appeals as of right from the order.

I

Plaintiff first argues that she pled facts in avoidance of governmental immunity by claiming that the city committed an intentional tort. Specifically, plaintiff alleges that the City of Detroit engaged in willful, wanton and intentional conduct because, when it dispatched the EMS ambulance, it knew that the unit was so far away that it could not arrive for at least twenty to twenty-five minutes, but its dispatcher did not disclose this information nor was anything done to dispatch someone else who could arrive at the scene sooner. Therefore, plaintiff alleges, the trial court erred in granting the city summary disposition.

The trial court did not specify under which court rule summary disposition was granted. However, the city moved for summary disposition pursuant to MCR 2.116(C)(7) and (8). We find both court rules applicable and proceed from this basis.

MCR 2.116(C)(7) provides for summary disposition when suit is barred by immunity granted by law. When a governmental agency moves for summary disposition under this court rule, the plaintiff's complaint must be reviewed to see whether facts have been pled justifying a finding that recovery in a tort cause of action is not barred by governmental immunity. *Dettloff v Royal Oak,* 178 Mich App 319, 321; 443 NW2d 410 (1989).

Summary disposition under MCR 2.116(C)(8) is available when the plaintiff has failed to state a claim upon which relief can be granted. A motion in accordance with this rule tests the legal sufficiency of the claim by the pleadings alone. *Formall, Inc v Community National Bank of Pontiac,* 166 Mich App 772, 777; 421 NW2d 289 (1988). All factual allegations in support of a claim are accepted as true, as well as all inferences which can fairly be drawn from the facts. *Mills v White Castle System, Inc,* 167 Mich App 202, 205; 421 NW2d 631 (1988), lv den 431 Mich 880 (1988). The motion should only be granted when a claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery. *Scameheorn v Bucks,* 167 Mich App 302, 306; 421 NW2d 918 (1988), lv den 430 Mich 886 (1988).

Our Supreme Court has held, in a memorandum opinion, that there is no intentional tort exception to governmental immunity. *Smith v Dep't of Public Health,* 428 Mich 540, 544; 410 NW2d 749 (1987), reh den 429 Mich 1207 (1987), aff'd sub nom *Will v Michigan Dep't of State Police,* 491 US —; 109 S Ct 2304; 105 L Ed 2d 45 (1989).[2] As stated by

---

[2] *Smith* was a memorandum opinion signed by all six of the participating justices. (GRIFFIN, J., did not participate.) There were several concurring and dissenting opinions, but the only issues upon which a majority of the justices agreed are the seven delineated in the memorandum opinion.

Justice BRICKLEY in his separate opinion in *Smith*, "intentional torts are immune if committed within the scope of a governmental function." *Id.,* p 611. See also *Giddings v Detroit,* 178 Mich App 749, 754; 444 NW2d 242 (1989). A governmental function was defined by the Supreme Court in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), reh den 421 Mich 1202 (1985), as an activity which is expressly or impliedly mandated or authorized by constitution, statute or other law. *Id.,* pp 618, 620.[3] The *Ross* definition is to be broadly applied and only requires that there be *some* constitutional, statutory or other legal basis for the activity in which the governmental agency was engaged. *Hyde v University of Michigan Bd of Regents,* 426 Mich 223, 253; 393 NW2d 847 (1986).

In the case at bar, there was a statutory basis for the City of Detroit's operation of an ambulance service. See MCL 333.20708; MSA 14.15(20708). It follows that the city was engaged in a governmental function. Therefore, under *Smith, supra,* plaintiff's allegations of an intentional tort were not sufficient to avoid governmental immunity because no such exception exists.

However, we also note that plaintiff did not plead or even assert in the lower court the *limited* statutory exception to immunity under MCL 333.20737; MSA 14.15(20737) enunciated by a panel of this Court in *Malcolm v East Detroit,* 180 Mich App 633, 638-640; 447 NW2d 860 (1989). Therefore, we decline further review. Summary disposition pursuant to MCR 2.116(C)(7) or (8) was appropriate.

---

[3] The *Ross* definition was subsequently adopted by the Legislature in 1986 PA 175. See MCL 691.1401(f); MSA 3.996(101)(f).

II

Plaintiff next contends that the trial court erred in granting the city summary disposition on plaintiff's claim for breach of an implied contract to transport decedent to a close hospital in a reasonable amount of time.

The trial court again failed to state under which court rule it was granting summary disposition. However, defendant moved to summarily dispose of this claim in accordance with MCR 2.116(C)(8) and our analysis will proceed under this rule.

In the instant case, we believe that plaintiff has failed to state a claim upon which relief can be granted because plaintiff failed to establish all the elements for a contract, specifically the element of consideration.

In *Lowery v Dep't of Corrections,* 146 Mich App 342, 359; 380 NW2d 99 (1985), lv den 425 Mich 870 (1986), this Court made the following statements regarding the elements of an implied contract.

> [A] contract based on implication must still satisfy the elements of mutual assent and consideration, *Spruytte v Dep't of Corrections,* 82 Mich App 145; 266 NW2d 482 (1978). In *Spruytte,* the Court found that no implied bailment contract could be found to exist because (1) there was no mutual assent since the procedure for bailment of property upon incarceration was required as an aspect of prison management and control, and (2) there could be no finding of consideration since defendant was performing a preexisting duty.

Thus, in the present case, if the city had a preexisting duty to provide emergency ambulance service to decedent, then there was no consideration for an implied contract and therefore no contract. Under MCL 333.20715; MSA 14.15(20715) the city

had a duty to provide ambulance service and emergency medical assistance irrespective of an individual's ability to pay or source of payment. We feel that this provision established a preexisting duty upon the city to provide such care and therefore no consideration was present for an implied contract. See *Penner v Seaway Hospital,* 169 Mich App 502, 510-511; 427 NW2d 584 (1988); *Guilbault v Dep't of Mental Health,* 160 Mich App 781, 784-785; 408 NW2d 558 (1987), lv den 429 Mich 896 (1988). Plaintiff's implied contract claim was so clearly unenforceable as a matter of law that no factual development could justify a right to recovery. *Scameheorn, supra.* The trial court properly granted the City of Detroit summary disposition.

III

Plaintiff's final argument is that the trial court erroneously granted summary disposition to the decedent's employer, Woodlawn, as to plaintiff's intentional tort claims under the WDCA, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*[4] Specifically, plaintiff alleges that Woodlawn knew that trucks were recklessly driven and that employees would ride on the cabs of trucks but did nothing about the occurrences. In addition, plaintiff asserts that whether these facts establish an intentional tort should be left within the purview of the jury.

Under the WDCA, an injured employee's exclusive remedy against an employer is the right to recover benefits under the WDCA. MCL 418.131; MSA 17.237(131). However, our Supreme Court has held that employees' actions against their employers for intentional torts are not barred by

[4] Woodlawn moved for summary disposition pursuant to MCR 2.116(C)(4) and (8).

the exclusive remedy provision of the WDCA. *Beauchamp v Dow Chemical Co,* 427 Mich 1, 11; 398 NW2d 882 (1986). In rendering this holding, the Court adopted the "substantial certainty" definition for an intentional tort, which provides that if an injury is substantially certain to occur as a consequence of the employer's intended actions, then the employer is deemed to have intended the injuries as well. *Id.,* p 22.[5]

Following the *Beauchamp* decision, the Legislature amended the exclusive remedy provision of the WDCA to specifically include an exception for intentional torts of employers. The provision now reads:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. *The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court.* This subsection shall not enlarge or reduce rights under law. [MCL 418.131(1); MSA 17.237(131)(1).]

Panels of this Court have held, and we agree, that the amendment was only intended to clarify the existing statute and therefore applies retroactively. *Temple v H J Heinz Co,* 180 Mich App 138, 139-140; 446 NW2d 869 (1989); *Schefsky v Evening*

---

[5] The *Beauchamp* Court stressed that substantial certainty should not be confused with substantial likelihood and it also rejected the true intentional tort definition. *Beauchamp, supra,* pp 24-25.

*News Ass'n,* 169 Mich App 223, 227-228; 425
NW2d 768 (1988). The amendment clearly requires
(1) a deliberate act by the employer and (2) that
the employer specifically intended an injury. The
second prong, an intent to injure, requires that the
employer had *actual* knowledge that an injury was
certain to occur and wilfully disregarded that
knowledge.

In reviewing plaintiff's claims, we conclude that
plaintiff failed completely to establish any deliber-
ate acts by Woodlawn or that Woodlawn had
actual knowledge that decedent's injuries were
certain to occur. Decedent's death was caused by
the employee's erratic driving and decedent's own
action in riding on top of the truck. While plaintiff
did present allegations that Woodlawn had knowl-
edge that erratic driving by employees occurred,
plaintiff did not establish that Woodlawn had ac-
tual knowledge that any injury was certain to
occur from this activity. In addition, Woodlawn's
failing to summon an alternative ambulance did
not constitute a deliberate act. Woodlawn's actions
were negligent at best, rather than intentional.
Plaintiff's attempt to elevate these actions to the
level of intentional tort are woefully inadequate.
Therefore, we find that, under MCL 418.131(1);
MSA 17.237(131)(1), plaintiff totally failed in her
efforts to demonstrate that Woodlawn committed
an intentional tort. The WDCA was plaintiff's exclu-
sive remedy and summary disposition was proper.

IV

In light of the foregoing conclusions, we affirm
the trial court's orders granting all defendants'
motions for summary disposition.

Affirmed.