Ronald **LAUNDREE** and Carlene Laundree, and Lori Laundree, Scott Laundree and Rhonda Laundree, by their Next Friend, Carlene Laundree, Plaintiffs–Appellants,

v.

**AMCA INTERNATIONAL,** an alien corporation, and Travelers Insurance Company, a foreign corporation, Defendants–Appellees.

No. 89–2058.

United States Court of Appeals, Sixth Circuit.

Argued May 1, 1990.

Decided July 6, 1990.

Mikael G. Hahner, Roger W. Zappa, Hancock, Mich., for plaintiffs-appellants.

Keith E. Swanson, Darrell R. Dettmann (argued), Marquette, Mich., for defendants-appellees.

Before KENNEDY and WELLFORD, Circuit Judges; and ENGEL, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Plaintiff Ronald Laundree, a Michigan resident, sued defendant employer, AMCA International (AMCA), and its insurance carrier, Travelers Insurance Company (Travelers), following plaintiff's work-related injury. Jurisdiction in the district court was based on diversity of citizenship. Plaintiff was injured when another employee, who was allegedly drunk, failed to operate a crane properly. Plaintiff maintains that numerous members of AMCA's management team knew that Phelps, the crane operator, regularly reported to work drunk, and knew that Phelps was drunk on the date in question.

The accident in AMCA's workplace occurred on January 21, 1987. The Michigan Supreme Court shortly before this date had occasion to decide whether intentional torts by an employer might take a work-related injury outside the broad scope of Michigan's workmen's compensation law in *Beauchamp v. Dow Chemical Co.*, 427 Mich. 1, 398 N.W.2d 882 (1986). Intentional torts were held to be outside the scope of the workmen's compensation law, and would therefore give rise to a traditional suit against the employer in tort:

> An intentional tort is not ... limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. It does not matter whether the employer wishes the injury would not occur or does not care whether it occurs. If the injury is substantially certain to occur as a consequence of actions the employer intended, the employer is deemed to have intended the injuries as well.

*Beauchamp*, 398 N.W.2d at 891–92 (footnotes and internal quotations omitted).

Following *Beauchamp*, the legislature amended the Michigan workmen's compensation act to allow separate suits for intentional torts, an area in which the act had previously been silent. The legislature's definition of intentional tort, however, was stricter than that adopted by the Michigan Supreme Court in *Beauchamp*.

> An intentional tort shall exist only when an employee is injured as a result of a *deliberate act* of the employer and the *employer specifically intended an injury*. An employer shall be deemed to have intended to injure if the employer had *actual knowledge* that an injury was *certain to occur* and *willfully disregarded* that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

M.S.A. § 17.237(131), M.C.L. § 418.131 (emphasis added).

This revised statute became law on May 14, 1987, four months after the injury complained of by plaintiff. Ruling against Laundree from the bench on defendants' motion to dismiss, the district court indicated (1) that plaintiff failed to meet even the more liberal *Beauchamp* standard, and (2) that the amended statute is properly viewed as retroactive in its application. Plaintiff asserts that the district court was wrong on both scores, and appeals the adverse judgment.

1. Is plaintiff's claim barred because the amendment is retroactive?

Appellant argues that a split of authority exists in the Michigan courts of appeals on the retroactivity issue. In *Schefsky v. Evening News Ass'n*, 169 Mich.

App. 223, 425 N.W.2d 768 (1988), the court flatly held that the amended version of the workmen's compensation statute should be applied retroactively, because it is "remedial or procedural in nature." 425 N.W.2d at 770.

A statute which operates in furtherance of a remedy already existing and which neither creates new rights nor destroys existing rights is held to operate retroactively unless a contrary legislative intent is manifested. *Allstate Ins. Co. v. Vaulhaber*, 157 Mich.App. 164, 167, 403 N.W.2d 527 (1987); *Joe Dwyer, Inc. v. Jaguar Cars, Inc.*, 167 Mich.App. 672, 681, 423 N.W.2d 311 (1988).

425 N.W.2d at 770-71. The court's conclusion that the statute's amendment neither created new rights nor destroyed existing ones was bolstered by the actual language of the statute: "This subsection shall not enlarge or reduce rights under law." 425 N.W.2d at 770.

In *Bowden v. McAndrew*, 173 Mich.App. 591, 434 N.W.2d 195 (1988), the court acknowledged the retroactivity decision of the *Schefsky* panel, and concluded:

We agree [that the amendment should be applied retroactively]. In any event, using either the "substantial certainty" standard set forth in *Beauchamp* or the amendatory language, we believe that plaintiff's complaint sets forth a cause of action sounding in negligence, not an intentional tort and, thus, is barred by the exclusive remedy provision of ... § 131.

434 N.W.2d at 197. A later panel of the Michigan Court of Appeals, however, referred to both the *Schefsky* and *Bowden* retroactivity rulings as dicta. *Mikedis v. Perfection Heat Treating Co.*, 180 Mich. App. 189, 446 N.W.2d 648, 653 n. 2 (1989). We believe that this characterization of *Schefsky* is inaccurate. The *Schefsky* court, *after* pronouncing the amendment retroactive, noted that the plaintiff failed to satisfy the amendment's strict standard, and then concluded: "Indeed, in this regard, we observe that plaintiffs failed to meet even the 'substantial certainty' standard set forth in *Beauchamp*." 425 N.W.2d at 771. At any rate, the retroactiv-

ity issue was expressly avoided by the *Mikedis* court, and so its characterization of *Schefsky*'s retroactivity ruling as dicta was surely dicta itself.

*Temple v. H.J. Heinz Co.*, 180 Mich.App. 138, 446 N.W.2d 869 (1989), further strengthened the effect of *Schefsky*, holding:

We follow our Court's previous decision in *Schefsky* ..., which held that the amendment operates retroactively since it is procedural in nature, as by its terms "[t]his subsection shall not enlarge or reduce rights under law," and was apparently prompted by the Legislature's desire to correct or clarify uncertainty regarding the original act....

Additionally, we find the holding of *Schefsky* unchanged by our Supreme Court's recent plurality in *White v. General Motors Corp.*, 431 Mich. 387, 429 N.W.2d 576 (1988), which essentially held that [a different amendment to the workmen's compensation act] operated prospectively only for injuries occurring on or after the effective date. The Court found that the amendment ... affected substantive rights under the act by changing the standard of disability which an employee who retires and receives a nondisability pension must meet to receive workers' compensation benefits. Specifically, the amended language of that section stated in pertinent part: "this standard *supersedes* other applicable standards used to determine disability under either this chapter or chapter 4." [Emphasis added.]

In contrast, the above cited amendatory language of § 131 evidences a legislative intent only to clarify the original intent of the act by correcting a perceived misinterpretation in *Beauchamp*, and leaving the act itself substantively unaltered.

446 N.W.2d at 870; *see also O'Shea v. Detroit News*, 887 F.2d 683, 689 (6th Cir. 1989) (applying the amendment retroactively).

Federal courts normally treat decisions of state courts of appeals on issues of state law as authoritative absent a strong show-

ing that the state's highest court would decide the issue differently. *Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1256 n. 14 (11th Cir.1988); *Tippecanoe Beverages v. S.A. El Aguila Brewing Co.*, 833 F.2d 633, 638–39 (7th Cir.1987).

We are satisfied that the *Schefsky* line of authority in Michigan sets out the existing Michigan law interpreting the pertinent amendment to the Michigan workmen's compensation statute as having retroactive effect, and applies to Laundree's claim. *See also, James v. Kirmin Die & Tool*, No. 108889 (Mich.App. July 24, 1989), and *Clement v. Drouillard*, No. 110578 (Mich. App. October 24, 1989).

2. Does plaintiff's complaint satisfy the *Beauchamp* standard?

■ Under the circumstances of this case, we would in any event conclude that plaintiff's complaint fails to meet even the more easily satisfied *Beauchamp* standard. *Beauchamp* went to great lengths to distinguish the "substantial certainty" standard from the more easily established "substantial likelihood" standard, citing *Serna v. Statewide Contractors*, 6 Ariz.App. 12, 429 P.2d 504 (1967), and *People v. Film Recovery Systems*,[1] as illustrating fact patterns that would meet the "substantial certainty" standard.

[In *Serna*, t]wo men were killed when a ditch caved in and buried them alive. In the five months preceding the disaster, inspectors had warned that "the sides of the ditch were not sloped properly, the side was sandy, more shoring was needed, and escape ladders should be placed every 25 feet." During that time a cave-in had occurred, burying one of the decedents up to his waist. All warnings were ignored.

*Beauchamp*, 398 N.W.2d at 892. The Michigan Supreme Court indicated that the facts in *Serna* might suffice to meet the substantial certainty test.

In *Film Recovery Systems,*

Film Recovery Systems went into the business of recovering silver from film negatives. This was done by placing the negatives into vats of cyanide. Hydrogen cyanide gas would bubble up from the vats and there was inadequate ventilation. The employer knew about the dangers. The labels on the chemicals being used contained adequate warnings; as a result, the employer hired only employees who could not speak or read English. The workers complained about the fumes daily. In 1981, an inspector had warned that the operation had outgrown the plant. The employer's response was to move the executive offices while tripling the size of the operations. Eventually one worker died and several others were seriously injured because of hydrogen cyanide poisoning. The corporate officers were convicted of involuntary manslaughter.

The facts in this case are a good example of the type of employer conduct that would seem to meet the substantial certainty as well as a substantial likelihood of harm standard.

*Beauchamp*, 398 N.W.2d at 892–93.

We conclude that the facts alleged by plaintiff here meet only the substantial likelihood standard, and not the substantial certainty standard in *Beauchamp*. It of course follows that the facts alleged also fail to satisfy the statute as amended.

We AFFIRM the judgment of the district court for both reasons stated by the district court.

---

1. *Film Recovery* was not previously reported, but the criminal convictions that arose from it were recently reversed by the state court of appeals. 194 Ill.App.3d 79, 141 Ill.Dec. 44, 550 N.E.2d 1090 (1990).