BENSON v CALLAHAN MINING CORPORATION

Docket No. 128887. Submitted May 7, 1991, at Marquette. Decided
October 8, 1991, at 9:15 A.M. Leave to appeal sought.

David A. Benson brought an action in the Marquette Circuit
Court against Callahan Mining Corporation, seeking damages
for injuries sustained in the course of his employment. The
defendant moved for summary disposition, citing the exclusive-
remedy provision of the Workers' Disability Compensation Act,
MCL 418.131; MSA 17.237(131). The plaintiff alleged that his
claim fell within the intentional-tort exception to the exclusive-
remedy provision, and the court, Edward A. Quinnell, J.,
agreed and denied the motion. The defendant appealed by leave
granted.

The Court of Appeals held:

The intentional-tort exception to the exclusive-remedy provi-
sion is inapplicable in this case. The court erred in denying the
defendant's motion for summary disposition.

Reversed and remanded.

SAWYER, J., concurring, stated that while there may be safer
methods to utilize than those the defendant required the plain-
tiff to use to perform his job, there is no indication that the
method employed by the defendant was certain to cause injury.
This case does not present a circumstance that has passed the
threshold between providing unsafe working conditions (negli-
gence) and requiring an employee to work under conditions in
which an injury is certain to follow (an intentional tort).
Contrary to the belief of the majority, Adams v Shepherd
Products, US, Inc, 187 Mich App 695 (1991), was correctly
decided.

*Steward, Peterson, Sheridan & Nancarrow* (by
*Brian D. Sheridan*), for the plaintiff.

*Conklin, Benham, Ducey, Listman & Chuhran,
P.C.* (by *Michael J. Gillman*), for the defendant.

Before: GRIFFIN, P.J., and SAWYER and WEAVER,
JJ.

PER CURIAM. Defendant appeals by leave granted from an order of the circuit court denying defendant's motion for summary disposition of plaintiff's claim under the intentional-tort exception of the Workers' Disability Compensation Act. We reverse.

Plaintiff was injured on June 13, 1987, when a portion of the roof of a tunnel in which he was working collapsed on him. At the time of the accident, plaintiff's job was assistant roof-bolter. A roof-bolter works with a partner to secure the roofs of tunnels. Roof-bolters attach cyclone fencing, also called roof plates, to the ceilings of tunnels with long bolts. The purpose of the cyclone fencing is to protect persons in the tunnel from loose rock that may fall from the ceiling.

Kevin Bureau, plaintiff's partner on the day of the accident, testified at deposition that the drilling that preceded the installation of the bolts was accomplished with a "jackleg," a pneumatic drill that was equipped with a pneumatic leg, apparently intended to rest on the floor, that extended upward as holes were drilled into the ceiling. After the holes were drilled, rockbolts would be placed in the holes and the drill bit in the jackleg would be replaced with a driver. The jackleg would then be used to force the bolt into the hole where it would be secured. On the day he was injured, plaintiff and Bureau were at the end of a tunnel and were working to bolt up the rest of the tunnel. Plaintiff and Bureau had attached one side of a section of cyclone fence along the length of the tunnel's ceiling. Bureau had drilled a hole into the side of the tunnel and plaintiff attempted to push a bolt into the hole. Plaintiff was not able to insert the bolt far enough into the hole to allow the jackleg to be placed underneath the bolt and drive it up into position. Plaintiff used a sledgehammer

to drive the bolt further into the hole, then turned away from the unsecured portion of the ceiling to help Bureau with the jackleg. At that moment, a portion of the ceiling or the side of the tunnel that the two were attempting to secure fell onto plaintiff, severely injuring him.

Bureau testified that the ramp (a work platform on the floor of a tunnel constructed from broken rock) on which the two were working was in poor condition; that the ramp was not level and that many large boulders were present, making for difficult footing; and that he requested a loader to use to reramp the pile, but was told to work off the ramp as it existed.

Bureau further testified that a jackleg is basically a drill that is used for drilling and blasting smaller tunnels, and also used to rockbolt in certain circumstances; that other machines were designed specifically for rockbolting that allowed the operator to drill holes and install bolts from a safe distance away from any danger posed by loose rock, but defendant did not own any such machines; that the operation could have been made safer had defendant ordered the tunnel's ceiling bolted as the tunnel was being developed, rather than securing the ceiling six months later, during which time the tunnel was exposed to air and water; that tunnels should have been rockbolted as they were being developed because of the amount of blasting that was being done; and that he had filed suit against defendant after he was fired for refusing to work under unsafe conditions.

A report written by an official of the Mine Safety and Health Administration described the work site where the accident occurred as consisting of ragged, broken material on a steep slope. The report stated that the accident occurred when plaintiff "moved between the drill and the heading

and under unbolted roof." The report also cited as a contributing factor the necessity for plaintiff to assume the required position in rockbolting with the insecure footing under the bolted area. Defendant was issued a citation for the violation of a regulation, though it is not clear what conduct the regulation proscribed.

The issue presented is whether this case comes within the so-called intentional-tort exception to the exclusive-remedy provision of the Workers' Compensation Disability Act. Under MCL 418.131; MSA 17.237(131), workers' compensation is the exclusive remedy against an employer, unless an employee is injured as a result of an intentional tort. An intentional tort exists under the terms of the statute where an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended an injury if the employer had actual knowledge that an injury was certain to occur and wilfully disregarded that knowledge. Whether an act is an intentional tort is a question of law for the court. *Id.*

In denying defendant's motion for summary disposition, the court concluded that plaintiff could not establish that defendant had actual knowledge that an injury was certain to occur on the exact date and location at which plaintiff was injured, but did conclude that defendant had actual knowledge that an injury was certain to occur at some point during the rockbolting process. The court further cited defendant's refusal to supply equipment to improve the ramp and the failure to provide a roof-bolter machine with adequate protection as establishing that defendant had wilfully disregarded the knowledge of the certainty that an injury would occur during the roof-bolting process.

We conclude that the intentional-tort exception to the exclusive-remedy provision of the Worker's Disability Compensation Act is inapplicable in the case at bar. As discussed in the concurring opinion, we consider this case to be distinguishable from *Adams v Shepherd Products, US, Inc,* 187 Mich App 695; 468 NW2d 332 (1991). However, we note that we do not agree with *Adams,* and follow it only because we must under Administrative Order No. 1990-6, 436 Mich lxxxiv. We believe *Phillips v Ludvanwall, Inc,* 190 Mich App 136; 475 NW2d 423 (1991). *Tolbert v US Truck Co,* 179 Mich App 471, 474-475; 446 NW2d 484 (1989), *Pawlak v Redox Corp,* 182 Mich App 758; 453 NW2d 304 (1990), and *Bowden v McAndrew,* 173 Mich App 591; 434 NW2d 195 (1988), illustrate correct application of the statute.

Reversed and remanded with instructions to the trial court to enter an order of summary disposition in favor of defendant. We do not retain jurisdiction. Defendant may tax costs.

SAWYER, J. *(concurring).* Although the majority and I agree on the resolution of this case and, I believe, the fundamental reasoning and analysis to reach that resolution, I write separately because we do not agree on our view of one of the prior cases in this area, *Adams v Shepherd Products, US, Inc,* 187 Mich App 695; 468 NW2d 332 (1991). I was a member of the panel that decided *Adams* and continue to believe it was correctly decided. Furthermore, because we distinguish this case from *Adams,* Administrative Order No. 1990-6, 436 Mich lxxxiv, Mich Ct R, p A 1-45, is inapplicable.

A claim of unsafe working conditions does not satisfy the intentional-tort requirement to avoid the exclusive remedy of workers' compensation because such an allegation merely claims negli-

gence by the employer. See *Tolbert v US Truck Co,* 179 Mich App 471, 474-475; 446 NW2d 484 (1989). In *Tolbert,* this Court rejected a claim of intentional tort where the decedent was fatally injured when his vehicle slipped between a stationary trailer and a loading dock and the trailer's movement was caused by an allegedly defective brake system. The Court concluded that these facts established unsafe working conditions rather than an intentional tort. *Id.*

Similarly, this Court rejected an intentional-tort argument in *Pawlak v Redox Corp,* 182 Mich App 758; 453 NW2d 304 (1990), where the decedent was killed when he fell from the top of the cab of a truck owned by the defendant while the truck was being driven by a coworker. The plaintiff argued that the defendant was aware that trucks were recklessly driven and that employees would ride on the cabs of the trucks, but did nothing. This Court concluded that the plaintiff had not established any deliberate act by the employer or that the employer had actual knowledge that injuries were certain to occur. *Id.* at 768. An intentional-tort claim was also rejected by this Court in *Bowden v McAndrew,* 173 Mich App 591; 434 NW2d 195 (1988) (bank teller injured during a bank robbery unsuccessfully argued that an intentional tort was established by the bank's failure to provide adequate security system and training of tellers), *Martin v Raker,* 173 Mich App 23; 433 NW2d 377 (1988) (employee injured when he fell from a plank between moving trailers because of the jerking of the trailers), and *Boyer v Louisville Ladder Co, Inc,* 157 Mich App 716; 403 NW2d 210 (1987) (employee injured when a safety cable snapped claimed that an adequate safety cable could have been provided).

The Court did find the intentional-tort exception

applicable, however, in *McNees v Cedar Springs Stamping Co,* 184 Mich App 101; 457 NW2d 68 (1990). In *McNees,* the plaintiff was injured while working at a press machine that allegedly had a malfunctioning foot pedal. The plaintiff contended that the defendant had been warned that the foot pedal was malfunctioning and that the defendant had actual knowledge that an injury was certain to occur. Despite this knowledge, according to the plaintiff, the defendant nevertheless required the plaintiff to work at the press, which necessitated use of the allegedly defective foot pedal. After the accident, the defendant allegedly destroyed all the foot pedals in the shop. *Id.* at 103-104. This Court concluded that the intentional-tort exception requires that the plaintiff be able to allege a specific danger known to the employer that is certain to result in an injury and that the employer required the plaintiff to work in the face of such danger. *Id.* at 105.

The *McNees* Court was satisfied that the plaintiff had alleged an intentional tort, pointing to the allegations that the defendant had knowledge of the defect in the machine that caused the accident, the defect was not obvious to the employee, a request had been made to the employer to correct the danger, there was an intentional refusal to make corrections, there was a history of consistent violations of the Occupational Safety and Health Act, there were several previous incidents that came close to injuring other employees as a result of the defect in question, there were orders to work on the machine with the defective foot pedal, and there was an intentional destruction of damaging evidence after the accident. *Id.* at 105-106. The Court concluded that these allegations, if proved, would show that the employee was forced to work in the face of a known and certain danger

with respect to the specific machine that caused the accident and, therefore, the intentional-tort exception to the exclusive-remedy provision applied. *Id.* at 106.

This Court also concluded that the intentional-tort exception to the exclusive-remedy provision was applicable in the recent case of *Adams, supra.* In *Adams,* the plaintiff lost three fingers of her right hand while operating a circular saw at her place of employment. The saw in question was a table saw built by the defendant's maintenance department for the purpose of shaving casters to accommodate the customers' specifications. The machine utilized a circular saw, which was affixed upside down to a plywood table top, the safety guards had been removed from the circular saw and the "on/off" switch was taped to the "on" position. It was also alleged that the defendant had failed to supply adequate instructions with regard to the use of the saw. Furthermore, the saw was designed in such a manner that the casters, after passing through the saw, would fall through a slot into a catch basket under the table. The worker was required to check the casters in the basket every thirty minutes, which required the worker to reach underneath the table of the saw and be exposed to the unguarded blade. *Id.* at 697-698. One of the maintenance men who had designed the machine had previously reached under the machine for a caster and avoided injury only because his hand struck the side of the blade. The maintenance supervisor testified by deposition that the employees could check the casters only by reaching under the table where the unguarded saw blade was turning and stated affirmatively that when a safety guard is removed someone will be hurt. *Id.* at 698.

The distinctions between the cases that have

found an intentional tort and those that have found no intentional tort are admittedly subtle. However, the focus of the cases does center on the knowledge of the employer and the degree of certainty of the occurrence of an injury. In *Mc-Nees,* the employer had knowledge of the defect in the machine, there had been several incidents in which employees came close to injury, and there was a conscious refusal by the employer to correct the defects. In *Adams,* the injury occurred on a jury-rigged device designed and assembled by the defendant's employees, and even the maintenance supervisor acknowledged the inherent unsafe design of the machine in light of the task for which it was designed, including the recognition that an injury was certain to follow.

At some point, the conduct of the employer passes from a circumstance in which the employer has merely provided an unsafe working condition in which injury is possible, or even likely, to occur to the point where an injury is certain to occur and the employer has knowledge of that certainty. In the case at bar, the employer certainly could have taken steps to provide a safer working environment and may have been able to minimize or avoid the risk of injury to plaintiff. However, there is no indication that the method used by the employer, while perhaps not the safest method for securing the rockbolts, was an unaccepted practice in the mining trade because of the certainty of injury to employees. That is, while there may well be safer methods to utilize than that which defendant required plaintiff to use to perform his job, it does not follow that the method employed by defendant was certain to cause injury. Cf. *Phillips v Ludvanwall, Inc,* 190 Mich App 136; 475 NW2d 423 (1991) (although the employer was negligent and acted in reckless disregard for the safety of

employees, that does not establish knowledge that injury is certain to occur). Evaluating the circumstances as a whole, this case does not present a circumstance that has passed the threshold between providing unsafe working conditions and requiring an employee to work under conditions in which an injury is certain to follow. Accordingly, the intentional-tort exception to the exclusive-remedy provision of the Workers' Disability Compensation Act is inapplicable in the case at bar, and the trial court erred in denying defendant's motion for summary disposition.